Hillsborough, ⎱
Jan. 7, 1913. ⎰

### STATE *v.* NORMAND *& a.*

The statute to promote the sanitary production and distribution of food (Laws 1911, c. 15) was enacted to protect the health of the community and is a valid exercise of the police power; and the provisions which empower the state board of health to make necessary rules and regulations for the enforcement of the act were designed to furnish reasonable and effective means for the accomplishment of the legislative purpose, and do not render the statute invalid on the ground of an attempted delegation of legislative power.

APPEAL, from a conviction in the police court of the city of Manchester charging the defendants with a violation of the provis-

ions of chapter 15, Laws of 1911, in not complying with a rule of the state board of health requiring loaves of bread exposed for sale to be wrapped in paper. The case was tried in the superior court without a jury by *Wallace,* C. J., at the January term, 1912, resulting in a verdict of guilty. The court found upon the evidence submitted that the rule of the board of health regarding the wrapping of bread is a practicable one and is necessary and reasonable. To this finding the defendants excepted. They also excepted to the ruling that the board was legally authorized to make the rule in question.

*James P. Tuttle,* attorney-general, and *Patrick H. Sullivan,* solicitor (*Mr. Sullivan* orally), for the state.

*Thorp & Abbott* (*Mr. Abbott* orally), for the defendants.

WALKER, J. Section 1, chapter 15, Laws 1911, provides: "The existence or maintenance of any unclean, unhealthful, or unsanitary condition or practice in any establishment or place where food is produced, manufactured, stored, or sold, or of any car or vehicle used for the transportation or distribution thereof, is forbidden." In section 2 it is provided that "unclean, unhealthful, or unsanitary conditions or practices shall be deemed to exist . . . if food in the process of production, storage, sale, or distribution is unnecessarily exposed to flies, dust, or dirt, or to the products of decomposition or fermentation incident to such production, storage, sale, or distribution, . . . or if there is any other condition or practice which shall be deemed as endangering the wholesomeness of food." Section 3 gives to the state board of health, or its inspectors or agents, "full power and authority at all times to enter and inspect every building, room, or other place occupied or used for the production, storage, sale, or distribution of food, and all utensils and appurtenances relating thereto. And if any person, firm, or corporation is found to be violating any of the provisions of this act, then the state board of health shall issue an order to the aforesaid to abate the condition or practice in violation, within such time as may be deemed reasonably sufficient therefor." Section 4 empowers the state board of health "to make all necessary rules and regulations for the enforcement of this act." A penalty is imposed in section 5 for the violation of "any of the provisions of this act," or for the

failure of any one "to comply with the lawful orders and requirements of the state board of health duly made and provided in sections 3 and 4 of this act."

Under this statute the state board of health adopted certain rules and regulations designed to carry out the purpose of the statute, among which is the following: "Whereas, bread is an article eaten without being subjected to any preparation, and commonly undergoes frequent and objectionable handling and exposure in connection with its distribution, sale, and delivery from bakeries, stores, and wagons, it is ordered that all bread loaves, before removal from the baking room, shall be wrapped in clean, unused paper, unprinted or printed on one side only. The use of newspapers or of any unclean paper for the wrapping of any articles of food is prohibited." The defendants, although requested to do so, refused to comply with this order of the board of health, and being prosecuted under the statute, were found guilty. No exception was taken to the form of the complaint, and its sufficiency in this respect must be assumed. Nor is the defendants' exception to the finding that the rule regarding the wrapping of bread is a practicable, necessary, and reasonable one, on the ground that it is not supported by the evidence, entitled to much consideration. Much evidence was presented upon the question of the reasonableness of the rule in its application to the bakery business, and the finding or ruling of the court upon that issue seems to be amply justified. The mere fact that the wrapping of the loaves of bread in paper before they are offered for sale is attended with some expense does not prove that the rule is unreasonable. *Health Department* v. *Rector,* 145 N. Y. 32, 40, 41. Evidently the expense is very small in view of the object which the rule was intended to subserve. It is not apparent how that object could be attained at less expense. The wrapping of bread in paper when exposed for sale would seem to be the most feasible way of protecting it from the contamination caused by handling and by the presence of dust and flies and perhaps other noxious insects. If the board had the legal authority to make regulations in respect to this subject, the rule in question does not appear to be unreasonable.

But the defendants insist that as the legislature cannot delegate to individuals the power to legislate (*State* v. *Hayes,* 61 N. H. 264), it could not for that reason authorize the board of health to decide that such a rule was desirable and to impose its observ-

ance upon the people of the state. It is claimed that such procedure is an attempt to delegate legislative power. If that position is sound, the rule is invalid and the defendants were illegally convicted. If the legislature had incorporated in the statute the substance of the rule requiring bakers to wrap their bread in paper before offering it for sale, the statute would have been a constitutional exercise of the police power for the protection of the public health. Unless it is clear that a statute purporting to have been enacted for the protection of the public health and public morals has no relation to those objects, it cannot be set aside as unconstitutional and void. *State v. Roberts*, 74 N. H. 476. It is said in that case (*p.* 479) that the power of the legislature "to regulate, restrain, and prohibit whatever is injurious to the public health and morals is universally recognized, and nowhere more distinctly than in this state." If upon a reasonable construction of the act there appears to be some substantial reason why the observance of its provisions will promote the public health, it will be sustained as a valid exercise of the police power. *State v. Ramseyer*, 73 N. H. 31, 36. "The constitutional authority of the legislature, in the exercise of the police power of the state, to enact such regulations as are deemed reasonably necessary for the security and protection of the lives and health of all persons within the state is unquestioned." *State v. Forcier*, 65 N. H. 42. For other illustrations of the recognized extent of the police power, see *State v. White*, 64 N. H. 48; *State v. Campbell*, 64 N. H. 402; *State v. Marshall*, 64 N. H. 549; *State v. Pennoyer*, 65 N. H. 113; *State v. Griffin*, 69 N. H. 1.

One of the evident purposes of the legislature as disclosed by the act in question was to secure greater cleanliness in food when exposed for sale and to protect the public health, so far as practicable, from the danger incident to the unclean and unsanitary conditions to which food is often exposed; and to be more specific, it is declared in section 2 that such conditions "shall be deemed to exist . . . if food in the process of production, storage, sale, or distribution is unnecessarily exposed to flies, dust or dirt." In view of the well recognized medical facts that the germs of disease are distributed by flies when they come in contact with food designed for human consumption, like loaves of bread, and that typhoid fevers are often traced to that cause, it is clear that the statute has direct reference to the public health. Such a condition or practice is a constant danger

to the health of the community; and the statute was enacted to protect the people from that danger, and if enforced it would manifestly have that effect. Hence it is within the police power of the legislature and is a constitutional enactment, so far as its purpose is concerned. *State* v. *Cate,* 58 N. H. 240; *Watertown* v. *Mayo,* 109 Mass. 315, 319.

As it is clear that if the statute had contained the rule in question it would have been a valid provision, it remains to consider whether the fact that it was made by the board of health under a delegated power from the legislature renders it invalid as a rule. The statute is complete in itself. It in effect declares that bread unnecessarily exposed to flies and dirt is a public menace and provides a penalty for the infringement of any of the provisions of the act. But to secure an efficient enforcement of the act and to accomplish the legislative purpose, the state board of health is charged with the enforcement of the law, and for that purpose it is authorized "to make all necessary rules and regulations." This provision was not intended to authorize the board to legislate, or to add to, change, or modify the statute. It was not intended as a delegation of legislative power. The "rules and regulations" were to be such as might be deemed necessary "for the enforcement of this act." In order to prevent flies from congregating on the loaves of bread in bakers' shops and in their carts, one of the objects the legislature had in mind, some general rule, if a feasible one could be devised, was necessary for the practical enforcement of the act. And when the board of health made the rule requiring loaves of bread to be wrapped in paper they were not legislating, but merely exercising a power conferred upon them by the state as administrative officers. It was their duty to enforce the law, and the rule they promulgated in the exercise of that power was a means they adopted for the accomplishment of that purpose. They merely devised a reasonable and effective method by which the legislative purpose could be carried out.

The delegation of such power is not unusual. The state board of cattle commissioners is authorized to make such "regulations as the board deems necessary to exclude or arrest" diseases in cattle. P. S., c. 113, s. 5. Each board of medical examiners "may make any by-laws and rules, not inconsistent with law, necessary in performing its duties." Laws 1897, c. 63, s. 3. The inspector of steamboats may make rules and regulations. P. S., c. 119, s. 3: Laws 1899, c. 82, s. 1. Similar power is given to the

commissioners of pilotage. P. S., *c.* 120, *s.* 2. And numerous other instances might be cited of power given to public administrative officers to make rules for the enforcement of specific laws.

If such rules are not unreasonable, and if they are not repugnant to the laws of the state or the constitution, they are usually upheld as the exercise of power specially conferred by the legislature for the more efficient enforcement of the statutes to which they relate. "As the possessor of the law-making power," the legislature "may confer authority and impose duties upon others and regulate the exercise of their several functions. It may pass general laws for that purpose, giving them expressly or by necessary implication an incidental discretion to employ the proper means to fill up and regulate the details for themselves and subordinates, though the exercise of that discretion be *quasi*-legislative. . . . The true distinction is between the delegation of power to make the law, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made." 1 Lewis Suth. Stat., *s.* 88.

"It cannot be said that every grant of power to executive or administrative boards or officials, involving the exercise of discretion and judgment, must be considered a delegation of legislative authority. While it is necessary that a law, when it comes from the law-making power, should be complete, still there are many matters relating to methods or details which may be, by the legislature, referred to some designated ministerial officer or body. All such matters fall within the domain of the right of the legislature to authorize an administrative board or body to adopt ordinances, rules, by-laws, or regulations in aid of the successful execution of some general statutory provision." *Blue v. Beach*, 155 Ind. 121, 132. In that case it was held that under a general statutory authority to prevent the spread of contagious and infectious diseases, a rule of the state board of health upon the subject of vaccination was not legislation. In *Isenhour v. State*, 157 Ind. 517, it was held that a provision of the pure food law, that the board of health should adopt measures necessary to facilitate the law's enforcement and prepare rules regulating minimum standards of foods and defining specific adulterations, was not a delegation of legislative power.

"Congress cannot delegate its power to make a law; but it can

make a law to delegate a power to an administrative officer to determine a fact or condition of affairs in regard to which the law makes its own action depend." *Dastervignes* v. *United States*, 122 Fed. Rep. 30, 34; *S. C.*, 58 C. C. A. 346. In *Buttfield* v. *Stranahan*, 192 U. S. 470, it was held that where a statute acts on a subject as far as practicable and only leaves to executive officials the duty of bringing about the result pointed out and provided for, it is not unconstitutional as vesting executive officers with legislative powers; and that an act of congress to prevent the importation of impure and unwholesome tea is not unconstitutional because the power conferred to establish standards is legislative and not delegable to administrative officers. These principles have been applied in a great number of cases, among which are the following: *Commonwealth* v. *Plaisted*, 148 Mass. 375; *Brodbine* v. *Revere*, 182 Mass. 598; *Health Department* v. *Rector*, 145 N. Y. 32; *Arms* v. *Ayer*, 192 Ill. 601; *Hurst* v. *Warner*, 102 Mich. 238; *State* v. *Thompson*, 160 Mo. 333; *United States* v. *Bailey*, 9 Pet. 238; *Field* v. *Clark*, 143 U. S. 649.

It may be admitted that where the statute is incomplete as legislation and authorizes an executive board to decide what shall and what shall not be deemed an infringement of the law (*State* v. *Burdge*, 95 Wis. 390; *Schaezlein* v. *Cabaniss*, 135 Cal. 466), or where its authorization is general and the board makes a rule which conflicts with other statutory or constitutional rights (*Commonwealth* v. *Drew*, 208 Mass. 493; *Potts* v. *Breen*, 167 Ill. 67), the action of the board cannot be sustained; but in the present case the statute, as we have before noted, makes the practice of bakers unnecessarily exposing their bread to flies, dust, and dirt a nuisance, and merely authorizes the board of health to adopt and enforce such regulations as will result in the abatement of the nuisance. No discretion is vested in the board to determine whether such exposure of bread is or is not a nuisance, or what the penalty shall be for such exposure. The board is merely authorized to abate the nuisance declared to exist by the law-making power, and for this purpose—that is, the enforcement of the law— to make reasonable rules and regulations, for the violation of which, resulting in the continuance of the nuisance, a penalty is imposed. Nor is the rule in conflict with any existing statute.

If the defendants had prevented the nuisance by adopting some other precaution than that of wrapping their bread in paper, it may be they would not have been subject to prosecution for

not complying with the rule; but they did not attempt to abate the nuisance in any effective way, but persisted in maintaining a condition of things about their shop and carts which the legislature had prohibited. They were violators of the statute and became amenable to the penalty prescribed. *Morford* v. *Board of Health*, 61 N. J. Law 386, 391; Freund Pol. Pow., *s.* 34.

*Exceptions overruled.*

All concurred.