Merrimack,
No. 6099.

## Mobil Oil Corporation

*v.*

## John A. Durkin, Insurance Commissioner.

June 1, 1971.

*Hamblett, Kerrigan, Latourette & Lopez* ( *Mr. Chester H. Lopez, Jr.,* orally ) for the plaintiff.

*Warren B. Rudman,* Attorney General, and *Donald W. Stever, Jr.,* Attorney ( *Mr. Stever* orally ), for the defendant.

LAMPRON, J. Petition for declaratory judgment under RSA 491: 22 seeking a determination of the constitutionality of certain provisions of RSA ch. 406-B pertaining to contracts of insurance with insurers not authorized to do business in New Hampshire.

The parties executed an agreed statement of facts and the Presiding Justice ( *Flynn,* J. ) reserved and transferred without ruling substantially the following question of law: " Whether Section 12 of RSA 406-B is null and void as in violation of the Fourteenth Amendment of the Constitution of the United States. "

RSA 406-B:12 provides in part as follows: " I. Every insured who procures or causes to be procured insurance with any unauthorized insurer . . . upon a subject of insurance resident, located or to be performed within this state . . . shall within sixty days after the date such insurance was so procured, file a report of the same with the commissioner in writing and upon forms designated by the commissioner and furnished to such an insured upon request. The report shall show the name and address of the insured or insureds, name and address of the insurer, the subject of the insurance, a general description of the coverage, the amount of [ the ] premium currently charged therefor, and such additional pertinent information as is reasonably requested by the commissioner. "

Paragraph II thereof provides that such a report is required if the insurance is procured " through negotiations or an application, in whole or in part occurring or made within or from within or outside of this state, or for which premiums in whole or in part are remitted directly or indirectly from within or outside this state. " However, by virtue of RSA 406-B:2 II ( d ) ( supp. ) " Transactions involving contracts of insurance independently

procured through negotiations occurring entirely outside of this state which are reported in accordance with section 12" are not subject to the tax on unauthorized insurers imposed by RSA 406-B:11.

When notified by the commissioner of its duty under RSA 406-B:12 to report insurance on New Hampshire subjects and risks which it independently procured outside of this State, Mobil refused to file such a report. It sought to raise in these proceedings the constitutionality of the tax imposed by this chapter on unauthorized insurers as well as the constitutionality of section 12 requiring it to file a report of its transactions with such insurers.

The parties have agreed that the commissioner "does not now claim that Mobil or any of its insurers owe any premium tax to the State of New Hampshire." Mobil itself is not an insurer. As there is no present contention between the parties involving the imposition of a tax under RSA ch. 406-B, the question of the validity of such a tax is not presented. Cf. *Conway* v. *Water Resources Board*, 89 N.H. 346, 349, 199 A. 83, 87 (1938); *Piper* v. *Meredith*, 109 N.H. 328, 330, 251 A.2d 328, 329 (1969).

We turn to Mobil's other contention, the transferred question, that RSA 406-B:12 requiring it to report its transactions with unauthorized insurers is an attempt by the State to regulate insurance activities outside of New Hampshire in violation of the due process requirement of the fourteenth amendment to the Federal Constitution. The commissioner maintains that the purpose of this report is merely to enable him to determine whether Mobil's transactions with the unauthorized insurer are exempt under RSA 406-B:2 (II) (d) (supp.) from the tax imposed on such insurers by RSA 406-B:11.

Mobil properly does not raise the issue that such a report requirement involving insurance procured outside of New Hampshire might be in contravention of the power of Congress to regulate commerce among the several states. U.S. CONST. art. I, s. 8. The McCarran-Ferguson Act, 59 Stat. 33, 15 U.S.C. s. 1011 (1945) has freed state regulation for regulating and taxing the business of insurance from obstructions which might be thought to flow from the power of regulation of Congress. *Securities and Exch. Comm'n* v. *Nat'l Sec. Inc.*, 393 U.S. 453, 21 L. Ed. 2d 668, 89 S. Ct. 564 (1969); *see* Annot., 21 L. Ed. 2d 938 (1969).

Mobil, however, relying mainly on *State Bd. of Ins.* v. *Todd Shipyards Corp.*, 370 U.S. 451, 8 L. Ed. 2d 620, 82 S. Ct. 1380 ( 1962 ) contends that the report requirements of RSA 406-B:12 with which it must comply to avoid a penalty ( RSA 406-B:13 ( supp. ) ) are in violation of the due process requirements of the fourteenth amendment. In the *Todd* case the Supreme Court of the United States upheld a decision of the Supreme Court of Texas which declared unconstitutional a Texas statute imposing a five percent premium tax on policies purchased from an insurer not licensed in Texas covering risks in Texas. In its affirmance, the Supreme Court pointed out " that the only connection between Texas and the insurance transactions is the fact that the property covered by the insurance is physically located in Texas. " *State Bd. of Ins.* v. *Todd Shipyards Corp.*, 370 U.S. at 455, 8 L. Ed. 2d at 624, 82 S. Ct. at 1383.

The Court stated that its holding was in conformity with certain controlling decisions which hold " that a State does not have power to tax contracts of insurance . . . entered into outside its jurisdiction by individuals or corporations resident or domiciled therein covering risks within the State or to regulate such transactions in any way. " [ 370 U.S. at 455, 456, 8 L. Ed. 2d at 624, 82 S. Ct. at 1383 ] The decisions referred to are *Allgeyer* v. *Louisiana*, 165 U.S. 578, 41 L. Ed. 832, 17 S. Ct. 427 ( 1897 ); *St. Louis Cotton Compress Co.* v. *Arkansas*, 260 U.S. 346, 67 L. Ed. 297, 43 S. Ct. 125 ( 1922 ); *Connecticut Gen. Life Ins. Co.* v. *Johnson*, 303 U.S. 77, 82 L. Ed. 673, 58 S. Ct. 436 ( 1938 ).

In commenting later on these decisions, the Court, in *Hoopeston Canning Co.* v. *Cullen*, 318 U.S. 313, 316, 87 L. Ed. 777, 782, 63 S. Ct. 602, 605 ( 1943 ), stated: " In determining the power of a State to apply its own regulatory laws to insurance business activities, the question in earlier cases [ referring to *Allgeyer* in a note ] became involved by conceptualistic discussion of theories of the place of contracting or of performance. More recently it has been recognized that a State may have substantial interests in the business of insurance of its people or property regardless of these isolated factors. This interest may be measured by highly realistic considerations such as the protection of the citizen insured or the protection of the state from the incidents of loss. " *See Osborn* v. *Ozlin*, 310 U.S. 53, 65, 84 L. Ed. 1074, 1079, 60 S. Ct. 758, 762, 763 ( 1940 ); *Ministers Life & Cas. Union* v. *Haase*, 30 Wis. 2d 339, 357, 141 N.W.2d 287, 294 ( 1966 ); *Howell* v. *Rosecliff Realty Co.*, 52 N.J. 313, 324, 245 A.2d 318, 324 ( 1968 ).

The parties to the present proceedings have agreed to the following facts:

"2. Mobil carries on in New Hampshire the business of sale and delivery of petroleum products and related products, owning real and personal property in New Hampshire held at a 'gross book value' of $5,399,000 ( net $3,477,000 ). It sells about $15,800,000 worth of petroleum and related products in New Hampshire yearly, and employs 31 persons in New Hampshire, paying them gross annual wages of $310,000.

"3. Mobil procures and maintains insurance against loss or damage to its New Hampshire property, and certain liability insurance covering its New Hampshire business activities, through its New York office. This insurance is placed with insurance carriers that are not authorized to do an insurance business in the State of New Hampshire. . . .

"Mobil acts as a self-insurer for workmen's compensation and automobile liability insurance.

"4. Losses and liability claims are communicated to Mobil's New York office by its New Hampshire employees. The New York office communicates the matter to the insurer, who then deals with Mobil's New York office respecting disposition and settlement.

"5. Third-party liability claims are investigated and settled by Mobil itself in New Hampshire, and it seeks reimbursement from the nonadmitted insurer of such risks outside of the State. The insurer never enters the State of New Hampshire.

"6. As part of its business carried out in New Hampshire, Mobil itself sells substantial amounts of its products directly to the State, and to its employees driving state vehicles and using Mobil credit cards."

The substantial transactions of Mobil in this State, detailed above, with the risk of injuries or loss which might result therefrom to residents of New Hampshire; the fact that litigation which might ensue would likely be commenced in this State; the legitimate concern of New Hampshire that claimants within its borders be adequately protected against such injuries or losses, are proper concerns of this State. *See Hartford Accident & Ind. Co.* v. *Wolbarst,* 95 N.H. 40, 43, 57 A.2d 151, 153 ( 1948 ); *Johnson* v. *Johnson,* 107 N.H. 30, 32, 216 A.2d 781, 783 ( 1966 ). New Hampshire has a much more substantial interest to inquire into the insurance transactions of Mobil than the mere fact that its property is located here which is the proscription imposed by *State Bd. of Ins.* v. *Todd Shipyards Corp. supra.*

RSA ch. 406-B does not prohibit, limit, restrict or tax Mobil

for its dealings with unauthorized insurers. Furthermore in compliance with the dictates of the *Allgeyer, St. Louis Cotton* and *Connecticut General* trilogy it exempts from its operation "transactions involving contracts of insurance independently procured through negotiations occurring entirely outside of this state which are reported in accordance with section 12." RSA 406-B: 2(II) (d) (supp.). Section 12 merely requires Mobil, a corporation doing business here, to report to the commissioner pertinent information regarding insurance it procures from unauthorized insurers. This is a proper and reasonable means by which the commissioner can obtain the information necessary for him to determine which transactions with unauthorized insurers are taxable under RSA 406-B:11 and which are exempt.

We hold that the information sought is reasonably related to the duty entrusted to the commissioner by RSA ch. 406-B of preventing evasions of its provisions. We hold further that the reporting requirements imposed on Mobil do not place an unreasonable burden upon it and are a permissible exercise of the police power of the State. *State* v. *Normand,* 76 N.H. 541, 543, 85 A. 899, 900 (1913); *Woolf* v. *Fuller,* 87 N.H. 64, 68, 174 A. 193, 196 (1934); *Alabama Great Southern R.R.* v. *Federal Maritime Comm'n* 379 F.2d 100, 103-04 (D.C. Cir. 1967). We hold therefore that, given the valid policies of the State to be served by RSA ch. 406-B (*see* section 1 (supp.)), the report required of Mobil cannot be considered as an unreasonable encroachment on its constitutionally protected right to be free from unreasonable investigatory inquiry.

For the above reasons, we hold that the report required of Mobil by RSA 406-B:12 does not violate its constitutional rights. *United States* v. *Morton Salt Co.,* 338 U.S. 632, 652, 94 L. Ed. 401, 416, 70 S. Ct. 357, 368 (1950); *see Griswold* v. *Connecticut,* 381 U.S. 479, 14 L. Ed. 2d 510, 85 S. Ct. 1678 (1965).

Our answer to the transferred question is "No" RSA 406-B:12 does not violate any right of Mobil under the due process clause of the fourteenth amendment or any right under the fourth amendment to be free from unreasonable investigatory inquiry as contended by Mobil. It follows that section 12 is not null and void and the commissioner has the power and authority to require Mobil to file a report in accordance with its provisions.

*Remanded.*

GRIFFITH, J., did not sit; the others concurred.