NEW HAMPSHIRE–VERMONT HEALTH SERVICE d/b/a
NEW HAMPSHIRE–VERMONT BLUE CROSS–BLUE SHIELD

v.

FRANK E. WHALAND,
COMMISSIONER OF INSURANCE

December 28, 1979

*Upton, Sanders & Smith*, of Concord (*Richard F. Upton* orally), for the plaintiff.

*Thomas D. Rath*, attorney general (*Andrew R. Grainger*, assistant attorney general, orally), for the defendant.

PER CURIAM. This is an appeal brought under RSA 541:6 whereby the plaintiff, New Hampshire-Vermont Health Service, agent in this State for certain foreign insurers, seeks to overturn the order of the commissioner of insurance requiring it to provide coverage for mental illnesses as required by RSA 419:5-a and RSA 420:5-a (Supp. 1977). The principal issues presented by this appeal are whether the State may regulate the contents of employee benefit plans and whether RSA 419:5-a and RSA 420:5-a (Supp. 1977) apply to such employee welfare benefit contracts executed and delivered outside the State but which cover certificate holders residing and employed within New Hampshire. We conclude both issues affirmatively and uphold the commissioner's order.

Under New Hampshire law, every licensed hospital service corporation and every licensed medical service corporation must include in every contract with a subscriber to its services a provision that it "shall provide to each group, or to the portion of each group comprised of certificate holders of such insurance who are residents of this state and whose principal place of employment is in this state, coverage for expenses arising from the treatment of mental illnesses and emotional disorders." RSA 419:5-a; RSA 420:5-a (Supp. 1977). Such benefits are to be at least as favorable as the other minimum hospital and medical benefits specified. *Id.*

Massachusetts Blue Cross, Inc., and Massachusetts Blue Shield, Inc. (hereinafter Massachusetts Blues), as a result of a collective bargaining agreement between New England Telephone Company and its employees, entered into a contract executed and delivered at Boston, Massachusetts, to provide a program of hospital and medical benefits for all telephone employees in New England, except Connecticut. Massachusetts Blues did not, however, contract to provide the benefits for mental illnesses and mental disorders required by New Hampshire law. The plaintiff, as agent on a "cost plus a fee" basis, performs in New Hampshire the obligations of Massachusetts Blues, a corporation not licensed to do business in this State.

Associated Hospital Service of New York (hereinafter Associated), pursuant to a contract with E. F. Hutton executed and delivered at New York, agreed to provide hospital benefits for Hutton employees in about twenty-two states. Associated is to be paid by Hutton on a

"retrospective experience-rated basis, with adjustments at the end of the year." Because Associated is not licensed to do business in New Hampshire, it entered into a written agreement with the plaintiff whereby plaintiff agreed, as agent, to provide medical benefits in this State.

Under the above "national accounts," enrollment in the two-state area covered by the plaintiff involves approximately 50,188 persons eligible for coverage, of which approximately 72 percent reside and work in New Hampshire. It was also estimated that for the year 1978 the cost of adding New Hampshire mandated mental health benefits on all "national accounts" in the two-state area amounts to $324,075. Massachusetts Blues and Associated, the prime insurers, have so far declined to reimburse the plaintiff for the costs of complying with the commissioner's order to provide the mental health benefits required by RSA 419:5-a and RSA 420:5-a (Supp. 1977).

These proceedings began when New Hampshire residents employed in this State and covered by the above programs complained to the insurance commissioner that their beneficiaries had not received the mandated benefits in question. Following a hearing, the commissioner ruled that the record was not clear whether the two plans in question were welfare benefit plans within the meaning of the Employee Retirement Income Security Act of 1974 (Pub. L. 93–406, 88 Stat. 829, 29 U.S.C. § 1001 *et seq.* (1976)) (hereinafter ERISA). The commissioner ruled, however, that even if these plans came within the purview of ERISA, application of RSA 419:5-a and 420:5-a (Supp. 1977) was not thereby preempted.

The commissioner further ruled that the above statutes were intended to and do apply to the benefit plans in question, and that insured residents employed within the State were entitled to the benefits.

The plaintiff first argues that the provisions of RSA 419:5-a and RSA 420:5-a (Supp. 1977), as interpreted and applied, have been preempted by ERISA. 29 U.S.C. § 1001 *et seq.* (1976). This same issue with regard to RSA 415:18-a (Supp. 1977) has been thoroughly considered and resolved adversely to plaintiff's position in *Metropolitan Life Insurance Co. v. Whaland,* 119 N.H. 895, 410 A.2d 635 (1979).

In *Metropolitan* we first analyzed the ERISA preemption clause, 29 U.S.C. § 1144 (a), together with the savings clause, 29 U.S.C. 1144 (b) (2) (A), which exempts from preemption state laws regulating, *inter alia,* insurance. Considered also was the so-called "deemer clause," 29 U.S.C. § 1144(b)(2)(B), which provides that a state may not consider a welfare benefit plan as an insurer simply for the purpose of regulating

it as such. Thus, we concluded that there was no preemption by ERISA of state laws, regulating benefits to be granted by group insurers of benefit plans covered by ERISA. *Wadsworth v. Whaland*, 562 F.2d 70, 78 (1st Cir. 1977), *cert. denied*, 435 U.S. 980 (1978). Moreover, the present case is different from *Hewlett-Packard Co. v. Barnes*, 571 F.2d 502 (9th Cir. 1978) where the statute held to have been preempted by ERISA was one "that directly regulates employee benefit plans." *Id.* at 504.

■ Regarding preemption by ERISA, we see no material difference between the plans here at issue and that described in the *Wadsworth* case. ERISA imposes reporting and disclosure requirements for welfare benefit plans, 29 U.S.C. §§ 1021–31, as well as fiduciary standards for their management. 29 U.S.C. §§ 1101–14. RSA 419:5-a and 420:5-a (Supp. 1977), on the other hand, merely restrict the features of the welfare benefit plans that can lawfully be purchased from an insurer. We find no conflict with, nor an invasion of, a regulatory domain preempted by ERISA. *See Old Stone Bank v. Michaelson*, 439 F. Supp. 252 (D.R.I. 1977).

Plaintiff argues that, as regards New England Telephone Company employees, RSA 419:5-a and RSA 420:5-a (Supp. 1977) have been preempted by the National Labor Relations Act, 29 U.S.C. § 51 *et seq.* (1970) (hereinafter NLRA). In *Metropolitan v. Whaland*, 119 N.H. 895, 410 A.2d 635 (1979), however, we held that a similar statute, RSA 415:18-a (Supp. 1977), did not conflict with federal labor law and was therefore not preempted by it. The underlying reason for that conclusion is that the challenged statutes are State action pertaining to the regulation of insurance which is of only "peripheral concern" to the NLRA. *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 243 (1959). *See also Malone v. White Motor Corporation*, 98 S. Ct. 1185 (1978).

■ *Malone* held that "there is nothing in the NLRA . . . which expressly forecloses all state regulatory power with respect to those issues, such as pension plans, that may be subject to collective bargaining." *Id.* at 1190. In our view, the State is not regulating or prescribing the substantive terms of the collective bargaining agreement through the provisions of RSA 419:5-a or RSA 420:5-a (Supp. 1977).

■ Plaintiff also argues that the extraterritorial application of RSA 419:5-a and RSA 420:5-a (Supp. 1977) offends the commerce clause. We held in *Metropolitan v. Whaland*, decided this day, that a

similar statute, RSA 415:15-a (Supp. 1977), did not offend the commerce clause because it is within the police power of the State, promotes a legitimate public interest, and affects interstate commerce only incidentally. *Hughes v. Oklahoma*, 99 S. Ct. 1727, 1734 (1979). Contrary to plaintiff's contention, we hold that such a result is in comformity with the McCarran-Ferguson Act, 15 U.S.C. §§ 1011–1015 (1970). *See Mobil Oil Corp. v. Durkin*, 111 N.H. 178, 180, 278 A.2d 477, 479 (1971); *Hamberlin v. VIP Ins. Trust*, 434 F. Supp. 1196, 1200 (D. Ariz. 1977).

Finally, plaintiff argues that the provisions of RSA 419:5-a and RSA 420:5-a (Supp. 1977) were not intended to be applied extra-territorially and that such an application is in violation of due process. The commissioner ruled as follows:

> RSA 419:5-a and RSA 420:5-a were originally enacted in 1975 and were generally amended during the 1976 Special Session of the New Hampshire Legislature. A comparison of the amended law with the original law makes the legislative intent clear. Whereas the original law made no special provisions concerning medical and health service corporations in other states, the amended law added the phrase ". . . and every other similar corporation licensed under the laws of another state . . . ." In light of the clear legislative intent, we are compelled to give the Statute its intended extraterritorial effect in these cases.

Both of these sections, as well as RSA 415:18-a, which applies to insurers, were originally enacted by Laws 1975, ch. 349. RSA 415:18-a was inserted after RSA 415:18 which regulated group policies "to be delivered or issued for delivery in this state." *Id.* None of the three sections enacted by Laws 1975, ch. 349 contained any such limitation.

The amendatory language of Laws 1976, ch. 57, however, added the following language: "Each insurer," RSA 415:18-a; "[e]very hospital service corporation, and every other similar corporation licensed under the laws of another state ..." RSA 419:5-a; and "[e]very medical service corporation, and every other similar corporation licensed under the laws of another state . . . ." RSA 420:5-a (Supp. 1977). All three were to provide coverage for mental and nervous conditions "to each group, or to the portion of each group comprised of certificate holders of such insurance who are residents of this state and whose principal place of employment is in this state. . . ." *Id.* This history indicates a clear legislative intent that these provisions apply

to out-of-state insurers or other hospital/medical service providers. *See Auclair Transp., Inc. v. Ross Express, Inc.*, 117 N.H. 630, 634, 376 A.2d 146, 148 (1977).

Plaintiff maintains that the commissioner's order that it pay for the mandated benefits in question regardless of its ability to obtain reimbursement violates the due process clause of the Federal Constitution. It argues that, if these orders stand, plaintiff may well end up "holding the bag" with the prospect of a serious annual drain on its reserves of approximately $233,000 annually.

The commissioner responds that the burden imposed on the plaintiff by these statutes is under its own control. All that the statutes in question require is that the mandated benefits for mental illness for insured residents of this State who are employed here be equivalent to benefits provided for any other illness. Defendant further maintains that plaintiff's rate structure, especially through the device of experience rating whereby premiums are adjusted to reflect claims honored during the preceding policy period, would prevent the losses projected above by the plaintiff. We find no merit in plaintiff's due process claim.

It is well recognized that the purpose of the McCarran-Ferguson Act, 15 U.S.C. §§ 1011–1015 (1970), is to give support to the State system for regulating insurance. *McIlhenny v. American Title Ins. Co.*, 418 F. Supp. 364, 367 (E.D. Penn. 1976). It "has freed state regulation for regulating . . . the business of insurance from obstructions which might be thought to flow from the power of regulation of Congress." *Mobil Oil Corp. v. Durkin*, 111 N.H. 178, 180, 278 A.2d 477, 479 (1971). "[A] state may have substantial interests in the business of insurance of its people or property regardless" of the place of contracting. *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316 (1943).

"The State has a valid and substantial interest in the availability of mental health benefits and treatment to the members of a sizeable portion of its population who must rely on group policies for mental health treatment." *Metropolitan Life Insurance Co. v. Whaland*, 119 N.H. at 903–904, 410 A.2d at 641. The mere fact that State action in this domain may have repercussions beyond State lines is of no judicial significance absent a scheme to accomplish a forbidden result. *Hoopeston Canning Co. v. Cullen*, 318 U.S. at 320; *Mobil Oil Corp. v. Durkin*, 111 N.H. 178, 278 A.2d 477 (1971); *see Osborn v. Ozlin*, 310 U.S. 53, 62, 65 (1940).

■ We conclude that the challenged statutes constitute proper regulation of the business of insurance by the State within the meaning of the McCarran-Ferguson Act. *See Travelers Ins. Co. v. Blue Cross of West. Pennsylvania*, 481 F.2d 80 (3d Cir. 1973). These statutory provisions deal with the relationship between certain resident insureds and their insurer regarding the type of policy which must be issued. *S.E.C. v. National Securities, Inc.*, 393 U.S. 453, 460 (1969).

■ The commissioner found that Blue Cross-Blue Shield programs usually operate within a limited geographic area. However, through participation agreements with similar organizations in other areas, they can secure an agent, such as the plaintiff, and thereby extend their area of operations. The commissioner ruled that such an agent is required to " 'accept and abide by contractual interpretations of the Program, *as permitted by law*' . . . ." In the present situation, where the plaintiff, as a participating plan, is acting as agent of an out-of-state insurer, a contractual interpretation denying mental health benefits to New Hampshire certificate holders is not an interpretation "permitted by law."

■ We do not agree with the plaintiff's contention that, because the underwriting contract between the Massachusetts Blues and New England Telephone Company is a "special cost-plus a fixed fee contract," it is not the "business of insurance" within the meaning of *Group Life & Health Ins. v. Royal Drug Co.*, 99 S. Ct. 1067 (1979). "The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation and enforcement—these were the core of the 'business of insurance.' " *S.E.C. v. National Securities Inc.*, 393 U.S. 453, 460 (1969). *See also Ray v. United Family Life Ins. Co., Inc.*, 430 F. Supp. 1353, 1357 (W.D.N.C. 1977). We fail to see how the contract above does not involve the spreading and underwriting of a policyholder's risk, the primary element of the business of insurance. *Group Life & Health Ins. v. Royal Drug Co.*, 99 S. Ct. at 1073.

■ This appeal concerns insurers who, either by doing business in New Hampshire or through a New Hampshire agent, seek to issue policies covering groups of New Hampshire citizens who live and are employed in this State. By the challenged statutes, the State is regulating policies covering insureds in whose health and welfare it has a paramount interest. Thus the State is regulating an aspect of the interstate business of insurance which is so local in character as to permit diverse treatment as contrasted to those national aspects of

interstate commerce which require a single, uniform rule. L. TRIBE, AMERICAN CONSTITUTIONAL LAW 324, 325; *see Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316 (1943); *Osborn v. Ozlin*, 310 U.S. 53, 62 (1940); *Seasongood v. K & K Ins. Agency*, 548 F.2d 729, 737 (1977).

We hold that the State has a sufficiently significant interest in the health and welfare of its citizens to require that coverage for mental illnesses be provided through local agents of out-of-state insurers as specified by RSA 419:5-a and RSA 420:5-a (Supp. 1977).

*Appeal dismissed.*

KING J., did not sit; LAMPRON, C.J., retired, sat pursuant to RSA 490:3.