**BLUE CROSS AND BLUE SHIELD OF KANSAS CITY, a Missouri not-for-profit corporation, Plaintiff,**

**v.**

**Fletcher BELL, Commissioner of Insurance of the State of Kansas; Defendant.**

**and**

**Kansas Optometric Association, Inc.; Kansas Chiropractic Association; Kansas Association of Professional Psychologists; and Kansas Podiatry Association, Intervenor Defendants.**

**Civ. A. No. 84–2255.**

United States District Court, D. Kansas.

Nov. 7, 1984.

Max O. Bagby, Christopher C. Iliff, Bagby, Jacob & Iliff, Kansas City, Mo., J. Nick Badgerow, James R. Goheen, McAnany, Van Cleave & Phillips, Kansas City, Kans., for plaintiffs.

General Motors Corporation, Paul Scott Kelly, Jr., John J. Yates, Gage & Tucker, Kansas City, Mo., amicus curiae.

William W. Sneed, Michael J. Dutton, Brenda J. Mitchell, Sp. Asst. Attys. Gen., Topeka, Kans., for Fletcher Bell.

John C. Peterson, Hamilton, Peterson, Tipton & Muxlow, Topeka, Kans., Larry L. Luttjohann, Wagner, Arterburn & Luttjohann, Topeka, Kans., for intervenors-defendants.

Phil M. Cartmell, Jr., Stephen A. Murphy, J. Patrick Shepard, Gage & Tucker, Overland Park, Kans., amicus curiae General Motors Corp.

Jordan Rossen, Leonard Page, International Union, UAW, Detroit, Mich., C. David Whipple, Whipple & Kraft, Thomas E. Osborn, Kansas City, Kans., amicus curiae International Union, United Auto., Aerospace and Agr. Implement Workers of America.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This is a declaratory judgment action challenging a Kansas statute on the grounds that it is pre-empted by the Employee Retirement Income Security Act (ERISA) and that it violates the United States Constitution. This cause was tried to the court without a jury on September 6, 1984. The parties have completed post-trial briefing and the court is now prepared to rule.

Plaintiff, Blue Cross and Blue Shield of Kansas City (hereinafter Blue Cross) is a Missouri not-for-profit corporation which sells insurance in Missouri and in Johnson and Wyandotte Counties in Kansas. Defendant, Fletcher Bell, is the insurance commissioner of Kansas. The additional defendants are professional organizations representing optometrists, chiropractors, psychologists and podiatrists. The court has allowed the General Motors Corporation and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America to file amicus curiae briefs.

House Bill No. 3064, the challenged bill, was passed overwhelmingly [1] by the Kansas Legislature and signed into law by the governor to become effective July 1, 1984. Prior to that date, Blue Cross initiated this action and this court denied preliminary injunctive relief. The bill essentially requires that all insurance policies for individuals residing or employed in Kansas meet the requirements of four other Kansas insurance statutes.[2] An out-of-state

---

[1] The vote in favor of HB 3064 was 122–1 in the House of Representatives, and 39–0 in the Senate.

[2] House Bill No. 3064 provides:

AN ACT concerning insurance; relating to certificates of insurance issued, renewed or delivered within or outside this state; amending K.S.A. 40–2, 103 and repealing the existing section.

Be it enacted by the Legislature of the State of Kansas:

Section 1. K.S.A. 40–2,103 is hereby amended to read as follows: 40–2,103. The requirements of K.S.A. 40–2,100, 40–2,101, 40–2,102 and 40–2,104 *and amendments thereto* shall apply to all insurance policies, subscriber contracts *or certificates of insurance* delivered, *renewed* or issued for delivery *within or outside of this state or used within* this state *by or for an individual who resides or is employed in this state.*

Sec. 2. K.S.A. 40–2,103 is hereby repealed.

employer's group insurance plan or employee benefit plan offering health insurance to Kansas residents or employees must include certain coverages under this bill.[3]

Blue Cross contends that HB 3064 is invalid for the following reasons: [1] ERISA, 29 U.S.C. 1144(a), pre-empts all state laws that regulate ERISA employee benefit plans; and [2] by regulating insurance contracts entered into by parties outside the state of Kansas, the provision (a) impairs the right of private parties to contract, (b) denies due process to plaintiff, and (c) poses an undue burden on interstate commerce. Defendants contend that HB 3064 is valid under ERISA's "savings clause," 29 U.S.C. 1144(b)(2)(A), in that ERISA does not "exempt or relieve any person from any law of any State which regulates insurance...." Defendants also contend that the law is not unconstitutional in its extra-

---

Sec. 3. This act shall take effect and be in force from and after its publication in the statute book.

Reference is made in House Bill No. 3064 which mandates the requirements of K.S.A. 40–2,100, 40–2,101, 40–2,102 and 40–2,104. Those statutes are as follows:

*K.S.A. 40–2,100*

*Insurance coverage to include reimbursement or indemnity for services performed by optometrist, dentist or podiatrist.* Notwithstanding any provision of any individual, group or blanket policy of accident and sickness, medical or surgical expense insurance coverage or any provision of a policy, contract, plan or agreement for medical service, issued on or after the effective date of this act, whenever such policy, contract, plan or agreement provides for reimbursement or indemnity for any service which is within the lawful scope of practice of any practitioner licensed under the healing arts act of this state, reimbursement or indemnification under such policy contract, plan or agreement shall not be denied when such services are performed by an optometrist, dentist or podiatrist acting within the lawful scope of their license.

*History:* L.1973, ch. 194, § 1; July 1.

*K.S.A. 40–2,101*

*No policies, contracts or agreements for medical service shall deny reimbursement or indemnification for any service within scope of practice licensed under Kansas healing arts act.* Notwithstanding any provision of any individual, group or blanket policy of accident and sickness, medical or surgical expense insurance coverage or any provision of a policy, contract, plan or agreement for medical service, issued on or after the effective date of this act, whenever such policy, contract, plan or agreement provides for reimbursement or indemnity for any service which is within the lawful scope of practice of any practitioner licensed under the Kansas healing arts act, reimbursement or indemnification under such policy contract, plan or agreement shall not be denied when such service is rendered by any such licensed practitioner within the lawful scope of his license.

*History:* L.1973, ch. 195, § 1; July 1.

*K.S.A. 40–2,102*

*Insurance coverage for newly born children; notification of birth.* All individual and group health insurance policies providing coverage on an expense incurred basis and individual and group service or indemnity type contracts issued by a profit or nonprofit corporation which provides coverage for a family member of the insured or subscriber shall, as to such family members' coverage, also provide that the health insurance benefits applicable for children shall be payable with respect to a newly born child of the insured or subscriber from the moment of birth.

The coverage for newly born children shall consist of coverage of injury or sickness including the necessary care and treatment of medically diagnosed congenital defects and birth abnormalities.

If payment of a specific premium or subscription fee is required to provide coverage for a child, the policy or contract may require that notification of birth of a newly born child and payment of the required premium or fees must be furnished to the insurer or nonprofit service or indemnity corporation within thirty-one (31) days after the date of birth in order to have the coverage continue beyond such thirty-one day period.

*History:* L.1974, ch. 190, § 4; July 1.

*K.S.A. 49–0–2,104*

*Insurance coverage to include reimbursement for services performed by certified psychologist.* Notwithstanding any provision of an individual or group policy or contract of health and accident insurance, delivered within the state whenever such policy or contract shall provide for reimbursement for any service within the lawful scope of practice of a duly certified psychologist within the state of Kansas, the insured, or any other person covered by the policy or contract shall be allowed and entitled to reimbursement for such service irrespective of whether it was provided or performed by a duly licensed physician or a duly certified psychologist.

*History:* L.1974, ch. 189, § 1; July 1.

**3.** Defendant Bell stipulates that HB 3064 does not apply to "self-funded" employee welfare benefit plans defined and qualified under ERISA.

territorial effect. As a preliminary matter, the defendants challenge Blue Cross' standing to raise these claims.

*Standing*

The following facts are relevant to the question of standing:

1. Blue Cross issues many contracts of health care insurance to employers in both Kansas and Missouri which have employees who work and/or reside in Kansas. These employees are subscribers of Blue Cross through their employer or employment group, and health care benefits are provided to employees through contracts with Blue Cross.

2. Blue Cross employs residents of Missouri and Kansas. As an employer, plaintiff provides health care benefits to its own employees through "employee benefit plans." The evidence at trial was inconclusive as to whether Blue Cross' plans are ERISA plans, and also as to whether the plans are "self-funded."

3. The enforcement of HB 3064 would alter the contracts of health care benefits entered into by Blue Cross and increase the actual cost of the service benefits and of claims administration.

4. Plaintiff Blue Cross has an "actual stake in the outcome of this litigation."

The following conclusions of law are relevant to the question of standing herein:

■■■ 1. To raise the question of the constitutionality of the bill challenged herein, plaintiff must show that it has standing under the general principles respecting standing to sue. Those standards were set forth in *Worthing v. Hosey,* 73 F.R.D. 406, 409 (D.Kan.1977), as follows:

The general principles respecting standing to sue, which apply with equal effect to the question of mootness, have been pronounced numerous times by this and other courts in the Federal system. Essentially, the constitutional dimension of standing, dictated by the "case or controversy" requirement of Art. III of the Constitution, mandates that the plaintiffs in any action allege some threatened or actual injury resulting from the puta-

tively illegal conduct of the defendants before a Federal court may assume jurisdiction. See *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). The plaintiffs herein, therefore, must have some "personal stake in the outcome" of the litigation such as to assure that "concrete adverseness which sharpens the presentation of issues" to allow the determination of difficult constitutional questions. *O'Shea v. Littleton, supra,* at 494, 94 S.Ct. 669, 38 L.Ed.2d at 682. In this respect, it must reasonably be shown by the pleadings that the plaintiffs themselves have been injured, and not merely that other, unidentified members of an unrepresented class have suffered the alleged wrong. *Warth v. Seldin, supra,* 422 U.S. at 502, 95 S.Ct. at 2207, 45 L.Ed.2d at 357. The burden of alleging such "case or controversy" between themselves and the defendants in this case is upon the plaintiffs. *Id.*

■■■ 2. An actual case or controversy exists herein and plaintiff's stake in the outcome is sufficient to allow plaintiff to pursue these *constitutional* claims against these defendants.

■■■ 3. To assert a claim under ERISA, a plaintiff must have standing under 29 U.S.C. 1132(a), which provides, in the part pertinent hereto, that a civil action may be brought "(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." Blue Cross seeks equitable relief to redress alleged violations of ERISA and to enforce its provisions.

■■■ 4. United States district courts have jurisdiction over actions brought by a participant, beneficiary or fiduciary pursuant to 29 U.S.C. 1132(e)(1).

5. The circuit courts of appeal are split as to whether the grant of the right to sue

to only participants, beneficiaries or fiduciaries pursuant to 29 U.S.C. 1132 is exclusive. Compare *Fentron Industries, Inc. v. National Shopmen Pension Fund,* 674 F.2d 1300 (9th Cir.1982) [holding that an employer could sue in that the list of parties enumerated under § 1132 is not exclusive; to sue, a plaintiff must show: (1) an injury in fact, (2) that it is within the zone of interests protected by the statute, and (3) that the statute itself does not preclude the suit], with *Tuvia Convalescent Center, Inc. v. National Union of Hospital and Health Care Employees,* 717 F.2d 726 (2nd Cir.1983) [holding that an employer did not have standing to bring an action under § 1132]; *Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889 (2nd Cir.) *cert. denied,* —— U.S. ——, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983) [holding that § 1132(e)(1) is an exclusive jurisdictional grant]; *Crown Cork & Seal Co., Inc. v. Teamsters Pension Fund of Philadelphia and Vicinity,* 549 F.Supp. 307 (E.D.Pa. 1982), *aff'd.* 720 F.2d 661 (3rd Cir.1983); and *R.M. Bowler Contract Hauling Co., Inc. v. Central States, Southeast and Southwest Areas Pension Fund,* 547 F.Supp. 783 (S.D.Ill.1982).

6. The United States Court of Appeals for the Tenth Circuit has not decided whether § 1132 is the exclusive grant of the right to sue in the federal courts for the type of relief sought here. See *Peckham v. Board of Trustees of the International Brotherhood and Allied Trades Union,* 724 F.2d 100 (10th Cir.1983). This court is of the opinion that the Tenth Circuit would adopt the position that § 1132 is an exclusive jurisdictional grant and that to sue for equitable relief under ERISA a plaintiff must be a participant, beneficiary or fiduciary, for the reasons set forth by the Second Circuit when it reviewed *Fentron:*

In our view, the *Fentron* court applied an inappropriate standard in resolving this issue. We focus not on whether the legislative history reveals that Congress intended to *prevent* actions by employers or other parties, but instead on whether

there is any indication that the legislature intended to *grant* subject matter jurisdiction over suits by employers, funds, or other parties not listed in § 1132(e)(1)....

*Pressroom Unions-Printers League Income Security Fund,* 700 F.2d at 892.

■ 7. Neither in its status as contracting party providing health care benefits to group plans, nor in its status as employer, is plaintiff Blue Cross a "participant, beneficiary or fiduciary" of any employee benefit plan under ERISA. Therefore, Blue Cross may not sue in this court under ERISA.

### Constitutional Claims

■ The contract clause states, "No State shall ... pass any ... Law impairing the Obligations of Contracts." U.S. Const., Art. I, § 10. If the contract clause were read literally, HB 3064 would be violative in that the bill imposes on Blue Cross certain obligations which did not exist at the time certain of the insurance contracts were made, and further inhibits the rights of Blue Cross to reach agreement with other contracting parties on mutually agreeable terms. For example, it requires Blue Cross to reimburse certain providers of services (e.g. chiropractors) which under the terms of its insurance contracts Blue Cross is not otherwise responsible to reimburse. The contract clause is not to be read so literally, however. In *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 240, 98 S.Ct. 2716, 2720, 57 L.Ed.2d 727 (1978), the court stated: "The Clause is not, however, the Draconian provision that its words might seem to imply. As the Court has recognized, 'literalism in the construction of the contract clause ... would make it destructive of the public interest by depriving the State of its prerogative of self-protection.' *W.B. Worthen Co. v. Thomas,* 292 U.S. 426, 433 [54 S.Ct. 816, 818, 78 L.Ed. 1344]." Thus, the contract clause does not obliterate the police power of the state. *Id.* at 241, 98 S.Ct. at 2720.

■ In determining whether a state law operates to violate the contract clause, the primary inquiry is whether the state law operates as a substantial impairment of the contractual relationship. The "severity of the impairment measures the height of the hurdle the state legislation must clear." *Id.*, 438 U.S. at 244, 98 S.Ct. at 2722. In *Allied Structural Steel,* a Minnesota law regulating the vesting of pension plans was struck down. The Supreme Court described the facts in this manner:

> Entering a field it had never before sought to regulate, the Minnesota Legislature grossly distorted the company's existing contractual relationships with its employees by superimposing retroactive obligations upon the company substantially beyond the terms of its employment contracts. And that burden was imposed upon the company only because it closed its office in the State.

*Id.* at 249–50, 98 S.Ct. at 2724–25.

■ HB 3064 is not nearly so severe. Prior to HB 3064, Kansas law already regulated Kansas insurance policies in essentially the same manner. The new provision changes Kansas law only insofar as it makes the laws of Kansas applicable to all persons who reside or are employed in Kansas. Previously, the relevant provision had applied to insurance policies and subscriber contracts "delivered or issued for delivery" in the state. Further, impairments to existing contracts brought about by the bill are insubstantial when weighed against the interest of the state in self-protection. The court notes that HB 3064 was enacted for the health and welfare of the residents of and employees in Kansas. The contract clause does not obliterate such an exercise of police power.

■ With respect to Blue Cross' arguments under the commerce clause, U.S. Const., Art. I, § 8, Congress removed commerce clause limitations on the authority of the states to regulate insurance when it passed the McCarran-Ferguson Act, 15 U.S.C. 1011, *et seq. Western & Southern Life Ins. Co. v. State Board of Equaliza-tion,* 451 U.S. 648, 653, 101 S.Ct. 2070, 2075, 68 L.Ed.2d 514 (1981). HB 3064 regulates the "business of insurance" within the meaning of the McCarran-Ferguson Act, and the state law is permissible under the commerce clause in light of the Act.

■ Under Fourteenth Amendment due process standards, however, the state does not have the power to regulate the business of insurance outside of its jurisdiction. *State Board of Insurance v. Todd Shipyards Corp.,* 370 U.S. 451, 455, 82 S.Ct. 1380, 1383, 8 L.Ed.2d 620 (1962). Thus, for HB 3064 to be valid, its extraterritorial application must further a state regulatory interest and be supported by sufficient contacts with Kansas. *Osborn v. Ozlin,* 310 U.S. 53, 60 S.Ct. 758, 84 L.Ed. 1074 (1940); *Hoopeston Canning Co. v. Cullen,* 318 U.S. 313, 63 S.Ct. 602, 87 L.Ed. 777 (1943).

In *New Hampshire-Vermont Health Service v. Whaland,* 119 N.H. 886, 410 A.2d 642 (1979), a state agent for foreign insurers challenged on due process grounds an order of the Commissioner of Insurance requiring the agent to provide coverage for mental illnesses. The statute had extraterritorial effect in a manner similar to that in HB 3064. The court, following *Osborn* and *Hoopeston,* held that despite the statute's repercussions beyond the state line it did not accomplish a forbidden result. 410 A.2d at 647.

■ Likewise, this court finds that the extraterritorial effect of HB 3064 does not violate due process. The statute regulates only insurance policies and subscriber contracts with sufficient and substantial contact with Kansas through the insured's residency or employment in Kansas. The provision furthers a legitimate state interest under the police power of the state for the protection and welfare of the residents of Kansas by requiring certain matters to be covered in their insurance policies.

■ Blue Cross asserts a second due process argument, contending that the lan-

**1060**

guage "used in Kansas"[4] as stated in HB 3064 is so vague as to give Blue Cross no notice as to what conduct is required of it. In *Wadsworth v. Whaland,* 562 F.2d 70, 79 (1st Cir.1977), the court found a "vagueness" challenge to a similar law to be without basis in that the "void for vagueness" doctrine has as its purpose to warn individuals of the *criminal* consequences of their conduct. There is no criminal penalty associated with HB 3064 herein. Further, a void-for-vagueness challenge to this provision cannot stand in that the evidence adduced at trial does not show that the statute is vague in all of its applications. *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 497, 102 S.Ct. 1186, 1192, 71 L.Ed.2d 322 (1982).

IT IS BY THE COURT THEREFORE ORDERED that judgment is hereby entered in favor of defendants in this case. IT IS FURTHER ORDERED that each party bear his or its own costs.

---

**4.** HB 3064 applies K.S.A. 40–2,100, 40–2,101, 40–2,102 and 40–2,104 to insurance policies, subscriber contracts or certificate of insurance "delivered, renewed or issued for delivery with-

in or outside of this state or *used within this state* by or for an individual who resides or is employed in this state." (Emphasis added.)