Insurance Commission
No. 78-220

## METROPOLITAN LIFE INSURANCE COMPANY

v.

## FRANK E. WHALAND
## COMMISSIONER OF INSURANCE

December 28, 1979

*Paul, Weiss, Rifkind, Wharton & Garrison*, of New York (*Jay Greenfield* orally), and *McLane, Graf, Greene, Raulerson & Middleton P.A.*, of Manchester, for the plaintiff.

*Thomas D. Rath*, attorney general (*Andrew R. Grainger*, assistant attorney general, orally), for the commissioner.

PER CURIAM. The primary question presented by this appeal is whether under the form of regulating insurance, the State may require that specific benefits be provided by a plan subject to the Employee Retirement Income Security Act of 1974 (Erisa), 29 U.S.C. § 1001 *et seq.*, which provides insurance coverage for a State resident employed in this State and his dependents. Defendant ruled that the State may regulate such a plan under RSA 415:18-a (Supp. 1977), which regulates the content of group policies. Plaintiff timely filed a motion for rehearing. After a further hearing, defendant reaffirmed his original decision without modification and the plaintiff appealed under RSA ch. 541. We dismiss plaintiff's appeal.

The plan in question is the General Electric Insurance Plan (G.E. Plan) which covers approximately one million employees and their dependents across the United States. Comprehensive medical expense benefits are provided through the G.E. Insurance Plan Trust (G.E. Trust) and an excess risk group health insurance policy purchased from plaintiff. Under this arrangement, 85 percent of specified medical expenses (after the first $50) are reimbursable, except for

certain mental health expenses which are reimbursable at a 50 percent level.

Benefit payments remain the obligation of the G.E. Trust until the amount of payments reach a "trigger point" in any given month, at which time all additional benefit payments become the obligation of plaintiff. During 1977, the G.E. Plan provided a total of $88,648,791 for comprehensive medical claims under this arrangement. Of this amount, $87,560,437 or 98.8 percent of the payments were made by the G.E. Trust. The remaining $1,088,354 or 1.2 percent of the payments were made by plaintiff. Metropolitan is a named fiduciary for the payment and denial of claims and the review of denied claims.

The commissioner of insurance, together with the hearing officer, the assistant insurance commissioner, ruled that "State regulation of the benefits provided under the General Electric Insurance Plan is not preempted by Erisa despite the existence of the General Electric Insurance Plan Trust within the General Electric Insurance Plan."

The part of the decision entitled "Discussion" reads in part as follows:

> Metropolitan describes the General Electric Insurance Plan as consisting of essentially two components: the General Electric Insurance Plan Trust, with Metropolitan providing administrative services as a named fiduciary; and an experience-rated contract of excess risk insurance written by Metropolitan. . . . This arrangement could also be described as a conventional group health insurance policy with a very large deductible amount.
>
> The point is that General Electric provides complete health insurance benefits to its employees through the dual mechanisms of the General Electric Insurance Plan Trust and the Metropolitan Excess Risk Policy, and Metropolitan provides all the normal services of an insurance company to General Electric employees as certificate-holders under a group insurance policy. In fact, the present structure has evolved over its 22-year history from a 'conventional' group health insurance policy. The only significant distinction between the present arrangement and a conventional policy is that a limited portion of the risk of loss has been shifted to the General Electric Insurance Plan Trust, a self-funded mechanism. . . . Therefore, to require the General Electric Insurance Plan, through its insurer, Metropolitan, to offer benefits as required by RSA 415:18-a affects the underlying

Erisa trust only *indirectly* by regulating the contents of the group health insurance package provided to General Electric employees in New Hampshire, which is consistent with the holding in the *Wadsworth* decision (emphasis in original).

General Electric is incorporated under the laws of New York and has its principal place of business in that state. The group policy in question was issued and delivered in New York. Plaintiff is a mutual life insurance company organized and having its principal place of business in New York. Plaintiff does business in New Hampshire. It has several group health insurance policies issued and delivered outside New Hampshire which insure employees of corporations who are covered under collective bargaining agreements and who work and reside in New Hampshire.

In September 1977, Robert Tanguay, a resident of Somersworth and an employee of General Electric Corporation in New Hampshire, complained to the insurance department that plaintiff's payment for expenses incurred for psychiatric treatment rendered his dependent daughter was insufficient. This led to the proceedings which culminated in the decision of the insurance commissioner that RSA 415:18-a (Supp. 1977) governed the benefits under the G.E. Plan insured by plaintiff.

Plaintiff maintains that the commissioner's decision is in error because it misinterprets Erisa in a manner which subverts Congress' intention to foster uniform employee benefit plans subject only to federal regulation, requires fiduciaries to ignore their federal duties, imposes an excessive and unconstitutional burden upon interstate commerce, and contravenes the policies of the National Labor Relations Act (NLRA), 29 U.S.C. § 141 *et seq.*

I. *Erisa*

Erisa is a congressional enactment intended to protect the employee benefit rights and retirement security of working men and women. It is a comprehensive law that regulates two types of employee benefit plans. These are *"pension* plans, which provide for retirement or deferred income, and *welfare* benefit plans, which provide medical, health, sickness, accident, and other non-pension benefits." *Wadsworth v. Whaland,* 562 F.2d 70, 74 (1st Cir. 1977), *cert. denied,* 435 U.S. 980 (1978) (emphasis in original) (footnotes omitted); 29 U.S.C. § 1002(1) (1976).

Erisa imposes reporting and disclosure requirements for pension and welfare plans. 29 U.S.C. §§ 1021–1031 (1975). It also established fiduciary standards for management of those plans, *id.*, at 29 U.S.C. §§ 1101–1114 (1975), and a broad scheme of public and private enforcement. *Id.* at 29 U.S.C. §§ 1131–1144 (1975). *See generally* Hutchinson, *The Employee Retirement Income Security Act: Origins and Objectives*, 14 FORUM 611 (1979). Erisa's general purpose is to curb funding and disclosure abuses of employee pension and welfare benefit plans, and to protect the interests of participants and their beneficiaries in such plans. *Old Stone Bank v. Michaelson*, 439 F. Supp. 252, 254 (D.R.I. 1977).

■ When the United States Congress exercises a granted power, state legislation in that field may be challenged on the ground that it was the intent of Congress that the area be exclusively federally regulated or that local regulation on the same subject matter would conflict with and frustrate the federal scheme. *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978); *see New York Tel. Co. v. New York St. Dept. of Labor*, 440 U.S. 519 (1979).

> The purpose of Congress is the ultimate touchstone (citations omitted). Often Congress does not clearly state in its legislation whether it intends to pre-empt state laws; and in such instances, the courts normally sustain local regulation on the same subject matter unless it conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States.

*Malone v. White Motor Corp.*, 435 U.S. at 504; *see Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 479 (1974).

■ Recent decisions of the United States Supreme Court have revealed resistance toward finding collateral state legislation invalid. Conflict between state and federal legislation will generally not be found unless the intent of Congress to preempt is clear and manifest. *New York State Dept. of Social Service v. Dublino*, 413 U.S. 405 (1973); *see* Note, *The Preemption Doctrine: Shifting Perspectives on Federalism and the Burger Court*, 75 COLUM. L. REV. 623 (1975). This is especially true where the field which Congress is said to have preempted has been traditionally occupied by the states, as in the

regulation of insurance. We then start "with the assumption that the historic police powers of the states were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977); Brummond, *Federal Preemption of State Insurance Regulation under Erisa*, 62 IOWA L. REV. 57, 94 (1976–77) (hereinafter *Preemption under Erisa*); Okin, *Preemption of State Insurance Regulation by Erisa*, 13 FORUM 652, 653 (1977-78).

Congress was not silent about the preemptive effect that Erisa was to have. The scope of Erisa's preemption of state law is delineated in the following three subsections of the statute.

A. *29 U.S.C. § 1144(a) (1975)*

With certain exceptions which are not material to the issues on this appeal, this section provides that Erisa shall supersede "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan" covered by titles I and IV of Erisa, 29 U.S.C. § 1144(a) (1975) (emphasis added). Title I covers the two basic types of employee benefit plans, pension plans and welfare benefit plans. For purposes of preemption, Erisa defines "State law" as including "all laws, decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C. § 1144(c)(1). It is not disputed that the medical insurance plan provided by the employer in the present case is a "welfare benefit plan" under Erisa and that the mental health benefits mandated by the insurance commissioner are pursuant to "State law." RSA 415:18-a (Supp. 1977).

Argument is made that 29 U.S.C. § 1144(a) (1975), on its face, therefore preempts the State's attempt under RSA 415:18-a (Supp. 1977) to mandate mental health benefits in group health policies covering employee welfare benefit plans governed by Erisa. In other words, plaintiff maintains that the mental health benefits in question *relate to* an Erisa welfare benefit plan and that the State statute requiring the same is preempted.

B. *29 U.S.C. § 1144(b)(2) (1975)* provides: "Except as provided in subparagraph B [discussed hereinafter], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State *which regulates insurance*, banking or securities" (emphasis added).

We must therefore decide whether RSA 415:18-a (Supp. 1977) is a law which *regulates insurance*. It provides in part that:

> Each insurer that issues or renews any policy of group or blanket accident or health insurance providing benefits for

> medical or hospital expenses, shall provide to each group, or to the portion of each group comprised of certificate holders of such insurance who are residents of this state, . . . coverage for expenses arising from the treatment of mental illnesses and emotional disorders . . . . Such benefits shall be at least as favorable to the certificate holder as the minimum benefits specified [for other designated coverages].

Erisa itself does not define what state action constitutes the regulation of insurance for purpose of this savings clause. *See Group Life and Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, (1979) ("business of insurance" defined for purposes of McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.* (1970) ). State regulation of group insurance transactions has traditionally encompassed three broad categories:

> "[f]irst, states supervise group insurance carriers themselves . . . . The second broad category of group insurance laws is concerned with the regulation of certain aspects of transacting the group insurance business. . . . The third . . . involves state regulation of the content of group insurance contracts."

*Preemption Under Erisa, supra* at 81–83. The law in question was promulgated under the third category. The legislature by requiring that expenses for treatment of mental disorders be reimbursed on a level at least as favorable as physical ailments has acted in an area that has traditionally "been the subject of close scrutiny by the state governments." Manno, *Erisa Preemption and the McCarran-Ferguson Act: The Need for Congressional Action*, 52 TEMP. L.Q. 51, 53 (1979) (hereinafter *Erisa and the McCarran-Ferguson Act*).

The employee benefit plan in the present case relies on an insurance-type program in providing medical benefits, including the mental health benefits that are presently at variance with our State laws. If RSA 415:18-a (Supp. 1977) is held to apply to insurance policies purchased by the General Electric Insurance Plan, it will invariably *relate to* an "employee benefit plan" and would appear to be preempted under Erisa's broad preemption provision. 29 U.S.C. § 1144(b)(2)(A) (1975). On the other hand, RSA 415:18-a (Supp. 1977) is a State insurance law that appears to be saved under 29 U.S.C. §

1144(b)(2)(A) (1975), even though it relates to an employee benefit plan. *Erisa and the McCarran-Ferguson Act, supra* at 58.

C. *29 U.S.C. § 1144(b)(2)(B) (1975)* provides in part:

> Neither an employee benefit plan . . . nor any trust established under such a plan, *shall be deemed* to be an insurance company or other insurer . . . or to be engaged in the business of insurance . . . for purposes of any law of any State purporting to regulate insurance companies, insurance contracts . . ." (emphasis added).

This so-called "deemer" provision modifies the savings clause, § 1144(b)(2)(A) (*par.* B), which exempts state laws which regulate insurance from the general superseding clause, § 1144(a) (*par.* A).

"[O]n its face the 'deemer' provision does not prohibit a state from indirectly affecting plans by regulating the contents of group insurance policies purchased by the plans." *Wadsworth v. Whaland,* 562 F.2d 70, 78 (1st Cir. 1977), *cert. denied,* 435 U.S. 980 (1978); *see Insurers' Action Council, Inc. v. Heaton,* 423 F. Supp. 921, 926 (D. Minn. 1976). Erisa defines an employee benefit plan as providing benefits for its participants or their beneficiaries "through the purchase of insurance or otherwise." 29 U.S.C. 1002(1) (1976). "Congress was fully aware of the functions and scope of employee benefit plans and, nonetheless, exempted state laws regulating insurance from preemption." *Wadsworth v. Whaland,* 562 F.2d at 78 (footnote omitted).

■ The "deemer" provision in our opinion manifests Congress' decision to provide a safeguard to prevent a state from labelling a benefit plan as "an insurance company or other insurer . . . or . . . engaged in the business of insurance" so as to allow the state to apply to the plan as such its insurance laws under 29 U.S.C. § 1144(b)(2)(A). *Old Stone Bank v. Michaelson,* 439 F. Supp. 252, 255–56 (D.R.I. 1977); *see Preemption under Erisa, supra* at 98. However, the "deemer" provision on its face does not prohibit a state from applying its insurance laws under 29 U.S.C. § 1144(b)(2)(A) to regulate insurance under a welfare benefit plan by mandating its level of mental disability benefits such as those under RSA 415:18-a (Supp. 1977) even though it indirectly affects the plan. *See Wadsworth v. Whaland,* 562 F.2d 70 (1st Cir. 1977); *Insurers' Action Council, Inc. v. Heaton,* 423 F. Supp. 921 (D. Minn. 1976).

This interpretation of the superseding provisions of 29 U.S.C. § 1144 is consistent with the McCarran-Ferguson Act, 15 U.S.C. §§ 1011–1015 (1945), which provides that: "No Act of Congress shall be construed to invalidate, impair or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance." *Id*. § 1012(b). This act established the national policy of state primacy in insurance regulation. *Id*.

Correspondingly, Erisa provides in section 1144(d) that: "Nothing in this chapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States ... or any rule or regulation issued under any such law." Furthermore, insurance laws which do not *"relate to"* employee welfare plans are clearly not affected by the general superseding provisions of § 1144(a), and therefore do not need the protection of the savings clause of § 1144(b)(2)(A) which would be emasculated if indirect regulation of welfare plans by state insurance regulations were forbidden by section 1144(a).

Furthermore, a holding that the States cannot regulate benefits granted by group insurers of Erisa welfare benefit plans would leave a void in the regulation of that area because Erisa subjects welfare benefit plans to reporting and fiduciary standards only. Regulation of insurance benefits has been the domain of the States. *See* Okin, *Preemption of State Insurance, Regulation by Erisa*, 13 FORUM 652, 656–57 (1978).

For the above reasons, we therefore hold that Congress in its enactment of Erisa has not manifested a clear and manifest purpose to preempt the historic police powers of the States to regulate the contents of group insurance contracts as in the case in RSA 415:18-a (Supp. 1977). *New York State Dept. of Social Service v. Dublino*, 413 U.S. 405 (1973); *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977); *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978), *New York Tel. Co. v. New York St. Dept. of Labor*, 440 U.S. 519 (1979). Furthermore the provisions of RSA 415:18-a (Supp. 1977) are not in direct conflict or inconsistent with Erisa. *Malone v. White Motor Corp.*, 435 U.S. at 504.

## II. *Commerce Clause*

The plaintiff maintains that the extraterritorial application of RSA 415:18-a (Supp. 1977) to the General Electric welfare benefit plan constitutes an undue burden upon interstate commerce and therefore violates the commerce clause of the United States Constitution.

The test to determine the validity under the commerce clause of State legislation enacted in the exercise of state police power was articulated recently by the United States Supreme Court as follows:

> Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. . . . If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local intervention involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*A & P Tea Co. v. Cottrell*, 424 U.S. 366, 371–72 (1976); *Hughes v. Oklahoma*, 99 S. Ct. 1727, 1734 (1979); *see City of Philadelphia v. New Jersey*, 98 S. Ct. 2531, 2536 (1978).

■■ The crucial inquiry, therefore, must be whether it can fairly be said that RSA 415:18-a (Supp. 1977) can be viewed as a law directed to legitimate concerns of the State of New Hampshire which affects interstate commerce only incidentally. It is firmly established that a state can enact laws for the protection and welfare of its citizens under its police powers. *Opinion of the Justices*, 117 N.H. 749, 757, 379 A.2d 782, 787 (1977). There is also no question that the provisions of RSA 415:18-a (Supp. 1977), which require that group health insurance policies provide certain minimum benefits "to each group, or to the portion of each group comprised of certificate holders of such insurance who are residents of this state and whose principal place of employment is in this state" come within the bounds of our State's police power.

■ The above requirements apply equally to policies issued in and outside the State. The State has a valid and substantial interest in the availability of mental health benefits and treatment to the members of a sizeable portion of its population who must rely on group policies for mental health treatment. Absent such coverage, the State must treat those citizens at its cost in its own mental health facilities. We are of the opinion that the requirements of RSA 415:18-a (Supp. 1977) are more of a benefit to health and welfare than they are a burden to interstate commerce. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142

(1970). We hold that this statute does not violate the commerce clause by imposing an undue burden on interstate commerce. *Wadsworth v. Whaland,* 562 F.2d 70, 79 (1st Cir. 1977), *cert. denied,* 435 U.S. 980 (1978).

## III. *NLRA*

The plaintiff also contends that the provisions of RSA 415:18-a (Supp. 1977) conflict with the policies of the National Labor Relations Act (NLRA) 29 U.S.C. § 141 *et seq.* (1947), and therefore must be preempted by the supremacy clause of the United States Constitution. Specifically, plaintiff argues that the State's law interferes with free collective bargaining process because the statute mandates mental health benefits at levels the parties never agreed to provide in the terms of their collective bargaining agreement.

Here, as was the case with Erisa, "[t]he purpose of Congress is the ultimate touchstone." *Retail Clerks v. Schermerhorn,* 375 U.S. 96, 103 (1963). "We cannot declare pre-empted all local regulation that touches or concerns in any way the complex interrelationships between employees, employers, and unions; obviously, much of this is left to the States." *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 289 (1971).

The preemption doctrine in labor law is premised on the principle that the NLRB has preemptive authority to determine whether conduct is either protected under section 7 of NLRA, 29 U.S.C. § 157 (1947), proscribed as an unfair labor practice under section 8 of the act, 29 U.S.C. § 158 (1947), or whether it falls between these sections. Lesnick, *Preemption Reconsidered: The Apparent Reaffirmation of Garmon,* 72 COLUM. L. REV. 469, 472 (1972). Preemption will not occur where state action involves matters of "peripheral concern" to federal law. *See San Diego Union v. Garmon,* 359 U.S. 236, 243 (1959); Cox, *Labor Law Preemption Revisited,* 85 HARV. L. REV. 1337, 1355 (1972).

■ Medical insurance benefits are subject to mandatory collective bargaining. However, Congress in Erisa intended to preserve the States' authority to regulate insurance laws, including mandated prescribed mental health benefits. Moreover, the McCarran-Ferguson Act provides expressly that no federal law shall supersede state insurance laws unless it is specifically related to the business of insurance. 15 U.S.C. §§ 1011–1015 (1970). NLRA does not expressly supersede insurance laws such as RSA 415:18-a (Supp. 1977) and we

rule that such a law is peripheral to it. *Wadsworth v. Whaland*, 562 F.2d 70, 79 (1st Cir. 1977), *cert. denied*, 435 U.S. 980 (1978).

### IV. *Fiduciary Duty*

Plaintiff maintains that application of RSA 415:18-a (Supp. 1977) to the G.E. Plan would impose an obligation on plaintiff, as fiduciary of the plan, to pay benefits in conflict with the documents and instruments governing that plan. This argument would be valid if this court had not held that Erisa permitted the State to regulate and mandate the insurance benefits for mental health. Therefore, State regulation can be enforced without necessarily impairing the federal control under Erisa. Thus the G.E. Plan is necessarily amended to include the RSA 415:18-a (Supp. 1977) benefits, and plaintiff will not violate its fiduciary duty when paying claims accordingly, because no conflict exists. *See Florida Avocado Growers v. Paul*, 373 U.S. 132, 142 (1963).

*Appeal dismissed.*

KING, J., did not sit; LAMPRON, C.J., retired, sat pursuant to RSA 490:3.