**James M. DAWSON, as Administrator of Northern New England Carpenters Health and Welfare Fund; New Hampshire Masons Health and Welfare Fund; New Hampshire Plumbers Health and Welfare Fund; New Hampshire Sheet Metal Workers # 297 Health and Welfare Fund; New Hampshire Employee Benefits Council, Amicus Curiae,**

v.

**Francis E. WHALAND, Commissioner, Department of Insurance, State of New Hampshire.**

**Civ. No. 81–533–D.**

United States District Court, D. New Hampshire.

Jan. 18, 1982.

David L. Nixon, Manchester, N.H., for plaintiffs.

Ronald F. Rodgers, Concord, N.H., Alan P. Cleveland, Manchester, N.H., for defendant.

## MEMORANDUM OPINION

DEVINE, Chief Judge.

The highly commendable efforts of both the State of New Hampshire and the federal government to improve the health and welfare benefits available to working citizens give rise to this litigation. The issue presented for resolution is whether the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, preempts a recent amendment to New Hampshire's statute, Revised Statutes Annotated, Chapter 415, which governs the issuance and extent of "Accident and Health Insurance". *Id.* The matter is before the Court following hearing on the merits as to whether declaratory and injunctive relief should issue.[1] The factual background of the dispute thus presented is as follows.

Plaintiff James M. Dawson ("Dawson") is the Administrator of a number of "health and welfare" Funds, so-called, established by the additional plaintiffs[2] as a result of

---

1. At the commencement of the hearing, which had been scheduled on a preliminary injunction, counsel stipulated that inasmuch as the evidence to be adduced at such hearing would be all of the evidence available at a future hearing on the merits, the matter could be advanced and consolidated for hearing on the merits pursuant to the provisions of Rule 65(a)(2), Federal Rules of Civil Procedure.

2. These additional plaintiffs are Northern New England Carpenters Health and Welfare Fund, New Hampshire Masons Health and Welfare Fund, New Hampshire Plumbers Health and Welfare Fund, and New Hampshire Sheet Metal Workers # 297 Health and Welfare Fund. Additionally, the New Hampshire Employee Benefits Council, a voluntary New Hampshire corporation active on national, regional, and state levels in problems and issues relating to employee benefits was here allowed to inter-

collective bargaining. Administered in each instance by a board of trustees composed of an equal number of representatives from management and labor, contributions to the Funds are made at a specified level which is generally based on a certain number of cents per hour for each worker. The health and welfare benefits provided, however, are decided by the union members, who transmit their wishes to the board of trustees of each Fund. In turn, Dawson as Administrator of the Funds is directed to procure the coverage desired by the Fund beneficiaries at the lowest cost. In most instances[3] the Funds are self-insurers who retain insurance companies to provide coverage on a stop-loss basis.[4] In each instance, however, the insurance premiums are experience rated, *i.e.*, the amount of claims for a given year is projected, and if the actual claims exceed the projection, the premium is adjusted upward, while if the actual claims are under the amount projected, the premium is adjusted downward. The result of this is that the Funds reimburse the insurance carriers for all claims at a date subsequent to actual payment of such claims.

As they are negotiated individually by each union, the schedule of benefits among the plaintiff Funds differs somewhat (*see* Plaintiffs' Exhibit 3), but they generally provide coverage based on a minimum number of hours worked in a given six-month period by each union member. Plaintiffs' Exhibit 2.[5] As the beneficiaries of each of plaintiff Funds are involved in the construction trades, an industry of high mobili-

ty and seasonal occupations, the Funds provide for two six-month periods of eligibility, and there is a coverage lag to allow identification and verification of eligibility. Plaintiffs' Exhibits 2, 7. The vacillations in and availability of employment also account for marked differences in the annual operations of each Fund. Plaintiffs' Exhibits 4A, 4B, 4C, 4D.[6]

Aptly described as a "comprehensive and reticulated statute" enacted by Congress after careful study, *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 361, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980), ERISA is a broad-based legislative scheme, a central purpose of which is the prevention of the personal tragedies suffered by those employees whose vested benefits are not paid when pension plans are terminated. *Id.*, 446 U.S. at 374, 100 S.Ct. at 1732 (footnotes omitted). Accomplishment of the statutory goals was sought by Congress by requiring disclosure and reporting to plan participants; the establishment of standards of conduct, responsibility, and obligation for fiduciaries of such plans; the provision of appropriate remedies, sanctions, and ready access to federal courts; and the improvement of the equitable character and soundness of such plans. 29 U.S.C. § 1001(b), (c). *Hewlett-Packard Co. v. Barnes*, 425 F.Supp. 1294, 1296 (N.D. Cal.1977), *aff'd* 571 F.2d 502 (9th Cir.), *cert. denied*, 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978).

ERISA defines an "employee welfare benefit plan"[7] as including in pertinent part

vene as *amicus curiae* and has furnished the Court with a well crafted legal memorandum.

**3.** The Sheet Metal Workers Fund is fully insured, but is "experience rated" as such term is hereinafter described in the body of the Opinion.

**4.** The Funds contract with an insured to underwrite insurance over a given or "stop-loss" amount, but act as self-insurers below such amount.

**5.** Again, the eligibility rules vary, the Plumbers Fund requiring a minimum of 600 hours for eligibility, while that of the Carpenters requires 750 hours. Plaintiff's Exhibit 2.

**6.** Plaintiffs' Exhibits 4A, 4B, 4C, and 4D are the statement of operations of each of the plaintiff Funds. Dawson testified that the distinctive economic health of the Plumbers Fund, Plaintiffs' Exhibit 4C, was due solely to the ongoing construction of the Seabrook, New Hampshire, nuclear power plant, which has provided more work for that trade than for others involved in the construction industry.

**7.** ERISA also defines an "employee benefit plan" as including "an employee welfare benefit plan" as such in turn is above described in the statute. 29 U.S.C. § 1002(3).

any plan, fund or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits . . . .

29 U.S.C. § 1002(1).

It is clear on the record before the Court that the Funds here at issue are employee welfare benefit plans within the statutory meaning of ERISA. Additionally, all of the Funds are "Taft-Hartley trusts" in that they are also regulated by § 302 of the Labor Management Relations Act. 29 U.S.C. § 186(c). Furthermore, the exceptions of § 4(b), 29 U.S.C. § 1003(b) of ERISA are not applicable, and the plaintiff Funds accordingly are within the coverage of § 4(a), 29 U.S.C. § 1003(a) of ERISA.

Section 514(a), 29 U.S.C. § 1144(a), provides that

the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under 1003(b) of this title.

If, as plaintiffs here contend, this preemption provision is applicable to the circumstances of the instant litigation, the New Hampshire statute at issue must be characterized as a state law "that relate[s] to any employee benefit plan". 29 U.S.C. § 1144(a); *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981).

Enacted on June 23, 1981, with effective date of August 22, 1981, the amendment to N.H. RSA 415:18 is set forth in Chapter 391 of the Laws of 1981.[8] The thrust of this legislation, which amends N.H. RSA 415:18 VII by inserting therein a new subparagraph (g), is to extend group accident and health insurance benefits to any beneficiary who becomes ineligible for continued participation in a plan for a period of 39 weeks or nine months beyond the ordinary termination of such plan with respect to such beneficiaries, whether such termination occurred by death, loss of employment, or otherwise. Conditioned upon continued payment of premiums to the plan throughout the period of extension, the amended statute provides in pertinent part that

[a]ny employee benefit plan, fund or program which is communicated or its benefits described in writing to employees and which has been or is established by or on behalf of any individual, partnership, association, corporation, trustee, legal representative, employer or employee organization or any other organized group for the purpose of providing for employees or their beneficiaries through such individual, partnership, association, corporation, trustee, legal representative, employer or employee organization or any other group, medical, surgical or hospital benefits, in cash or in the form of care, service and supplies or other benefits in the event of sickness, accident, disability or death shall be subject to [the extension provisions of the statute].

N.H. RSA 415:18 VII(g)(3).[9]

Defendant Whaland in his position as Insurance Commissioner has issued an inter-

**8.** At hearing it was brought to the attention of the Court that certain portions of the complaint (¶¶ 1, 4, 5, 9, 10, 11, and Prayer for Relief No. 2) as well as the interpretations of the statute issued by defendant Whaland contained erroneous reference to *Chapter 398* rather than to the correct Chapter 391 of the Laws of 1981. Plaintiff accordingly moved to amend, and this motion was orally granted at hearing so that the pleadings herein might properly conform to proof. Rule 15(b), Fed.R.Civ.P. Accordingly, all further references in this Opinion will be to

either the properly enumerated Chapter 391 or to the amended sections in N.H. RSA 415.

**9.** The amendatory provisions of Chapter 391, Laws of 1981, are set forth in Plaintiffs' Exhibit 5, from whence the statutory language quoted in the body of the Opinion is taken. For reasons unclear, the ordinary pocket part service of the New Hampshire Revised Statutes Annotated has not as yet been generally completed and distributed for the 1981 New Hampshire Legislative session, although such session terminated as of June 30, 1981.

pretation of the aforesaid statutory amendment which makes clear that such are "applicable to all self-funded or self-insured employee health benefit plans". Plaintiffs' Exhibit 6.[10] As the exceptions to the statutory amendatory provisions of Chapter 391, Laws of 1981, are not here applicable, and as it is clear that plaintiff Funds fall within the definition of "self-funded or self-insured employee health benefit plans", the precise issue for resolution by this Court is whether ERISA preempts this statute with reference to any application it may have to plaintiff Funds. Defendant argues that the issue of preemption has already been thoroughly considered and decided adversely to plaintiffs' position both in the First Circuit, *Wadsworth v. Whaland*, 562 F.2d 70 (1st Cir. 1977), *cert. denied*, 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978), and in the New Hampshire Supreme Court, *Metropolitan Life Insurance Company v. Whaland*, 119 N.H. 894, 410 A.2d 635 (1979).[11]

In *Wadsworth v. Whaland, supra*, the New Hampshire statute under attack required the "issuers" of group health insurance policies to provide coverage for the treatment of mental illnesses and emotional disorders. *Id.*, 562 F.2d at 72. Therein, the Court found that the scope of the New Hampshire statute was such as to make it applicable to each insurer or certificate holder of insurance of the type at issue, defined the issue as "whether employee welfare funds are insured under the statute",[12] and found there was no intention pursuant to the statute to directly regulate employee welfare plans as insurers. *Id.*, 562 F.2d at 76. In answer to the contention of plaintiffs that the statute was preempted because it "indirectly" regulated the content of the group insurance policies purchased by the Funds, the First Circuit found and ruled that the so-called "deemer clause", 29 U.S.C. § 1144(b)(2)(B),[13] did not prohibit New Hampshire from "indirectly affecting plans by regulating the contents of group insurance policies purchased by the plans". *Id.*, 562 F.2d at 77–78.

*Metropolitan Life Insurance Company v. Whaland, supra*, involved a purported conflict arising from findings of the defendant Whaland that statutory amendments requiring payment of certain mental health benefits which differed from the Fund plan at issue affected the underlying ERISA trust only indirectly by regulating the contents of the group health insurance packet consistent with the holding in *Wadsworth, supra*. *Id.*, 119 N.H. at 897–98, 410 A.2d at 637. Holding, as did the First Circuit in *Wadsworth*, that the "deemer" provision did not prohibit a state from applying its insurance laws to regulate insurance under a welfare benefit plan by mandating its level of mental disability benefits which only indirectly affected the plan, the New Hampshire Supreme Court held that there

---

10. In pertinent part, defendant's interpretation provides:

RSA 415:18 VII(g) ... is applicable to all group health policies or contracts ... and it is also applicable to all self-funded or self-insured employee health benefit plans.... Where an individual's insurance is being continued pursuant to this new law, all accident and health insurance benefits of the group policy's plan of insurance will be continued except for any benefits payable in the event of accidental death or dismemberment or loss of time (short or long-term disability provision).

11. The Court is frankly puzzled as to why in an otherwise well crafted legal memorandum defendant's counsel made no reference to or attempt to distinguish cases decided subsequent to *Whaland, supra*, and *Metropolitan Life Insurance Company, supra*, of which more recent cases *Alessi v. Raybestos-Manhattan, Inc., supra*, is a primary example.

12. The Court specifically held that in the event employee welfare Funds were considered insurers under the statute at issue, the statute would be preempted. "In the event they are, we would have no difficulty finding explicit preemption by ERISA notwithstanding the saving clause." 562 F.2d at 76.

13. Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance for purposes of any law of any State purporting to regulate insurance companies....
29 U.S.C. § 1144(b)(2)(B).

was no preemption. *Id.,* 119 N.H. at 902–03, 410 A.2d at 640–41.

In arriving at their respective decisions, both the *Wadsworth* and the *Metropolitan Life Insurance Company* courts relied upon the so-called "savings" clause contained in § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A), which provides

> [e]xcept as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

In a trilogy of cases which had been argued jointly and in which opinion was rendered on May 11, 1981, the Second Circuit, departing from its previously articulated contra position [14] held that a New York statute which required coverage for disability due to pregnancy on the same basis on which other disabling conditions were covered was not preempted by ERISA. *Delta Air Lines, Inc. v. Kramarsky,* 650 F.2d 1287 (2d Cir. 1981); *Burroughs Corporation v. Kramarsky,* 650 F.2d 1308 (2d Cir. 1981); *Metropolitan Life Insurance Company v. Kramarsky,* 650 F.2d 1309 (2d Cir. 1981). The reason for this reversal of what had been a quite recent position (*see* n. 14, *supra*) was the holding of the Court that the recent dismissal by the Supreme Court of the United States, for want of a substantial federal question, of appeals from decisions of two state courts holding that ERISA did not preempt similar state law amounted to a judgment on the merits which bound the Second Circuit as a lower court. *Delta Air Lines, Inc. v. Kramarsky, supra,* 650 F.2d at 1294, 1295. The Supreme Court case relied upon was *Minnesota Mining & Manufacturing Co. v. Minnesota,* 444 U.S. 1041, 100 S.Ct. 725, 62 L.Ed.2d 726 (1980).

One week subsequent to the above-cited decisions of the Second Circuit, the Supreme Court of the United States decided the case of *Alessi v. Raybestos-Manhattan,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). Therein, two retired employees res-ident in New Jersey who had received workers' compensation awards subsequent to retirement challenged the validity of provisions in their employers' pension plans which reduced a retiree's pension benefits by an amount equal to a workers' compensation award for which the retiree is eligible. In holding that ERISA preempted the provisions of the New Jersey workers' compensation act which prohibited such offset, the Supreme Court pointed out that it was "of no moment that New Jersey intrudes indirectly" through such statute rather than directly through a statute designated as "pension regulation". *Id.* at 525, 101 S.Ct. at 1907. More importantly, the Court went on to state,

> Another consideration bolsters our conclusion that the New Jersey provision is pre-empted insofar as it bears on pensions regulated by ERISA. ERISA leaves integration, along with other pension calculation techniques, subject to the discretion of pension plan designers. See *supra,* at 1903–1905. Where, as here, the pension plans emerge from collective bargaining, the additional federal interest in precluding state interference with labor-management negotiations calls for preemption of state efforts to regulate pension terms. See *Teamsters v. Oliver,* 358 U.S. 283, 296, 79 S.Ct. 297, 304, 3 L.Ed.2d 312 (1959); *Railway Employees' Dept. v. Hanson,* 351 U.S. 225, 232, 76 S.Ct. 714, 718, 100 L.Ed. 1112 (1956). Cf. *Amalgamated Assn. of Street, Electric R. & Motor Coach Employees v. Lockridge,* 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). As a subject of collective bargaining, pension terms themselves become expressions of federal law, requiring preemption of intrusive state law.

*Id.* at 525, 101 S.Ct. at 1907 (footnotes omitted).

---

**14.** *See Pervel Industries, Inc. v. Connecticut Commission on Human Rights & Opportunities,* 468 F.Supp. 490 (D.Conn.1978), *aff'd mem.,* 603 F.2d 214 (2d Cir. 1979), *cert. denied,* 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980).

Accordingly, noting that the *Alessi* decision had contained no reference to the *Minnesota Mining & Manufacturing Co.* decision upon which it relied in previously denying preemption, the Second Circuit, following rehearing, on November 24, 1981, reversed its previous decisions in the *Delta* trilogy of cases above cited, and held that ERISA did preempt the provisions of the state statute at issue. *See* Attachment IV to *amicus* legal memorandum.[15]

The Ninth Circuit, *Server v. Interpace Corp.*, 657 F.2d 1115 (1981), has held that ERISA permits the offset of workers' compensation benefits against retirement benefits under a plan, and, similarly, the Sixth Circuit has so held. *Kapuscinski v. Plan Administrator, Etc.*, 658 F.2d 427 (6th Cir. 1981). Additionally, the Ninth Circuit has also held that a purported state (Hawaii) prepaid health care act is preempted by the application of ERISA. *Standard Oil of California v. Agsalud*, 633 F.2d 760 (9th Cir. 1980), *aff'd* —— U.S. ——, 102 S.Ct. 79, 70 L.Ed.2d 75 (1981). Additionally, the attempts of Minnesota through a comprehensive health insurance act, *St. Paul Electrical Workers Welfare Fund v. Markman*, 490 F.Supp. 931 (D.Minn.1980), Connecticut through a statute requiring continuations of payments to a welfare fund even while an employee is eligible for workmen's compensation payments, *Stone & Webster Engineering Corp. v. Ilsley*, 518 F.Supp. 1297 (D.Conn.1981), and Wisconsin through attempts to mandate certain conversion benefits and health insurance risk sharing plans, *General Split Corporation v. Mitchell*, 523 F.Supp. 427 (E.D.Wis.1981), have all foundered on the preemption provisions of ERISA.

In the instant case, as in *General Split Corporation, supra*, there was evidence of expenses in fairly substantial amounts to be incurred by the plaintiff Funds should they be required to apply the amendatory provisions set forth in Chapter 391, Laws of 1981, to their current Funds. In this regard, the evidence was to the effect that approximately 10,000 notices (at $2 per notice, or a total of $20,000) would have to be sent to all members of the Funds notifying them of the changes in the benefits afforded, and that the reprogramming of the computer (at a cost of some $3,000) would be required. It is also to be noted that on the basis of the evidence provided this Court, it appears that those members of the plaintiff Funds who are eligible for benefits generally are in receipt of such for a period of six to twelve months, or approximately the same period of time which Chapter 391 seeks to require pursuant to its terms.

We here deal not with the content of group insurance coverage, which the Court easily concedes falls within the primacy of state regulation of insurance pursuant to the McCarran-Ferguson Act, 15 U.S.C. § 1011, *et seq. Western and Southern Life Insurance Company v. State Board of Equalization*, 451 U.S. 648, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981). What the instant state legislation seeks to do with respect to the plaintiff Funds is determine who shall be eligible under such Funds, which the Court finds and rules have "emerge[d] from collective bargaining", *Alessi v. Raybestos-Manhattan, Inc., supra*, 451 U.S. at 525, 101 S.Ct. at 1907, and which, the Court also finds and rules, the state may not do. The instant circumstances are clearly distinguishable from those before the Court in *Wadsworth v. Whaland, supra*, and *Metropolitan Life Insurance Company v. Whaland, supra*, and, in light of *Alessi v. Raybestos-Manhattan, Inc., supra*, and its progeny, it is clear that ERISA preempts any attempts by defendant to enforce the provisions of Chapter 391 of the Laws of 1981 as against the plaintiff Funds. For the reasons hereinabove outlined, it is accordingly ordered that summary judgment must be and it is herewith granted in behalf of the plaintiffs and denied as to the defendant. It is further ordered that it be and it is hereby declared that to the extent the provisions of Chapter 391, Laws of 1981

---

15. Attachment IV to the *amicus* memorandum contains the two typescript Opinions of the Court of Appeals for the Second Circuit in the *Delta* trilogy of cases vacating its previous Order in Volume 650 F.2d in light of the ruling in *Alessi, supra.*

of New Hampshire, purport to regulate in any fashion the plaintiff Funds herein, they are preempted by the applicable provisions of ERISA. It is further ordered that the defendant and his agents, servants, employees, and attorneys be and they are hereby permanently enjoined from enforcement of the provisions of Chapter 391, Laws of 1981, as against the plaintiffs herein.

SO ORDERED.