John J. CASSIDY

v.

WELFARE AND PENSION FUND FOR the MID-JERSEY TRUCKING INDUSTRY.

Civ. A. No. 82-2771.

United States District Court, E.D. Pennsylvania.

Nov. 7, 1983.

John Cassidy, pro se.

William T. Josem, Philadelphia, Pa., Kenneth P. Zauber, New Brunswick, N.J., Welfare & Pension Fund for the Mid-Jersey Trucking Industry.

## MEMORANDUM

GILES, District Judge.

John Cassidy, *pro se*, a union member, seeks to collect certain health and welfare benefits, and to continue his eligibility, under the Welfare and Pension Fund for the Mid-Jersey Trucking Industry and Local 701 (hereinafter the "Fund" or "Plan"). The Fund has declined to pay benefits as demanded because it considers Cassidy ineligible under the terms of the Plan. The Fund has moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P., claiming that the undisputed material facts establish plaintiff's ineligibility. I agree and, accordingly, defendant's motion will be granted.

## I.

■ In considering a motion for summary judgment, all reasonable inferences from the evidence must be construed in favor of the non-moving party. *See Continental Insurance Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982); *Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981). If any material fact is shown to be in dispute the motion must be denied. *See Continental Ins. Co.*, 682 F.2d at 439. However, when a motion for summary judgment is supported by affidavit, the non-moving party may not rest upon the mere allegations of his complaint, but must set forth specific facts showing there is genuine issue for trial. If there is no such response the uncontested assertion may be taken as established fact for purposes of granting the motion. Rule 56(e), Fed.R.Civ.P. The statement of undisputed facts follows.

## II.

The Fund is an employee benefit plan within the meaning of section 302(c) of the Labor-Management Relations Act of 1947, as amended, ("LMRA") 29 U.S.C. § 186(c), and section 3(1) of the Employee Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. § 1002(1). The Fund provides certain welfare benefits to employees of participating employers. The full cost of benefits provided is borne by the employers. The general statement of benefits provided is set forth in a Group Benefits Booklet. As the Booklet denotes, the controlling document, for purposes of construing the Fund's obligations, is the Fund's Amended Agreement and Declaration of Trust.

The Plan provides that employees become eligible for temporary benefits, hospi-

talization and basic medical expenses on the first day of the month following the one in which one has worked eight (8) days or more for a participating employer. In order to be eligible for supplementary benefits for a prolonged illness the employee must have been covered for benefits by the Fund for twelve (12) consecutive months. To qualify for extraordinary medical expenses the employee must have been covered by the Fund for twelve (12) months of continuous employment. To qualify for dental and optical benefits an employee must have a minimum of 120 days of continuous eligibility. Benefits under the Plan are cancelled at the end of the month in which an employee does not work a minimum of eight (8) days or more for any one or any group of participating employers.

All benefits are provided through the self-funding mechanisms of the Plan, except that hospital benefits are provided through a contract with New Jersey Blue Cross. If under the Plan an employee ceases to participate, there is an automatic option given by that contract to convert the Blue Cross hospitalization benefits to direct pay coverage. However, as to other benefits, the Plan does not state that an employee has any option to continue benefits by direct contribution to the Fund.

As of July, 1980, the Fund excluded from coverage expenses for medical services incurred in automobile accidents as follows:

In the event an employee is injured in an accident involving an automobile and where the employee has an automobile insurance policy in the States of New Jersey and New York where no fault provisions are mandatory, the following applies:

No payment will be made for medical expenses as these are covered under your own insurance policy and are to be paid by your own insurance carrier.

Benefits Booklet at p. 34.

Employees whose claims have been denied may file an appeal of such denial. The initial appeal is to the Administrative Fund Manager. The next appeal level is the Board of Trustees of the Fund. Finally, any party to an unresolved dispute may demand final and binding arbitration before a board of arbitration appointed in accordance with the Amended Agreement and Declaration of Trust.

Plaintiff became eligible for benefits under the Plan on May 1, 1980, having worked more than eight (8) days for a participating employer. By mailgram dated July 24, 1980, plaintiff's employer placed him on permanent lay-off from his position. Contributions to the Fund on plaintiff's behalf stopped at the end of July, 1980. Although plaintiff's eligibility ceased at the end of July, officially his eligibility was not cancelled until December 1, 1980 when the Fund advised him in writing and also advised him of his conversion rights respecting Blue Cross coverage.

On July 7, 1980, Cassidy was involved in a hit-and-run automobile accident in Miami, Florida while driving an Avis Rent-a-Car. By letter dated August 15, 1980, he notified the Fund of the accident and his resulting disability. He requested conversion of his benefits to a direct pay basis. The Fund responded on August 29, 1980 informing him that his Blue Cross Identification Number was forthcoming, that his disability benefits would be paid upon receipt of a medical form, but that any medical expense claims had to be submitted to his automobile insurance carrier and paid under its "no-fault" provisions. Plaintiff did have Pennsylvania insurance policies with "no-fault" accident coverage.

The Fund paid Cassidy temporary disability benefits due under the Plan to the date of termination of his eligibility and notified him of his right to convert his Blue Cross coverage to an individual pay basis. Plaintiff submitted medical bills to the Fund on April 15, 1982 and the Fund denied payment by letter of May 3, 1982 citing his ineligibility and again advised him to submit any claim to his "no-fault" insurance carrier. Cassidy did not file an appeal from the denial.

At the time of the accident on July 7, 1980, Cassidy owned three (3) vehicles, each of which was covered by Pennsylvania

"no-fault" insurance. He filed claims arising from the accident with each of three insurance companies. In December, 1980, Cassidy received $13,500 from the Keystone Insurance Company for some of his hospital and doctor bills. Plaintiff sued the three companies seeking all allowable expenses, including medical expenses, loss of earnings and replacement services. Plaintiff also recovered $15,000 in uninsured motorist coverage from the Temple Insurance Company. He contends that more than $18,000 in doctor and therapy bills remain unpaid.

Plaintiff asserts that he did not know of an appeal procedure until March 21, 1983 during the discovery process in this case.

### III.

Cassidy asserts two bases for recovery, each of which should be construed in favor of the insured: first, that the Plan provisions are ambiguous insofar as restricting conversion to direct pay for benefits to Blue Cross coverage; and second, that by its plain language, the automobile accident exclusion applies only to employees who have no-fault insurance in New Jersey or New York.

■ As to the first contention, plaintiff maintains that he had every right to believe that conversion rights existed as to all benefits, and, alternatively, the Fund should be liable as though such a comprehensive right existed due to the absence of clear provisions to that effect in the Plan Booklet. As the defendant points out, the Plan Booklet itself specifies that conversion rights exist as to Blue Cross hospitalization coverage. That statement is under the numbered paragraph describing the Blue Cross Plan and is not ambiguous in and of itself. Under the descriptions of other benefits in the Booklet, there is no representation as to conversion rights or direct pay to the Fund. Therefore, it cannot be said that there is an ambiguity in the language of the Booklet as to conversion rights for benefits in general. Consequently, plaintiff had no basis, deriving from the language of the Plan Booklet, to expect that there existed conversion rights, except as to Blue Cross hospitalization coverage.

■ Alternatively, plaintiff contends that the Plan is unlawful under New Jersey law, N.J.Stat.Ann. 17B:27–51.12 since it does not specifically provide for continuation of health and welfare coverage at the employee's option if the employee becomes disabled from work. That statutory provision provides, in part;

A group policy ... shall provide that employees or members whose insurance under the group policy would otherwise terminate because of termination of employment or membership due to total disability of the employee or member shall be entitled to continue [coverage on a direct pay basis.]

However, this state statutory directive is applicable only where the employed has been employed and covered continuously for a full three months before termination of employment. N.J.Stat.Ann. 17B:27–51.12(a).

Here, plaintiff became eligible for benefits on May 1, 1980 but was laid-off effective July 25, 1980, then being unable to work because of disability. This was less than three full months of employment. Therefore, assuming the state statute's applicability, plaintiff would not be eligible for conversion rights.

Moreover, there is no contention that the Fund terminated plaintiff's coverage because of his total disability. Rather, the Fund contends that he had not worked for a participating employer the requisite length of time to be eligible for certain benefits. Further, there is no evidence that Cassidy's employer, Service Group, Inc., terminated the employment because of his total disability.

Section 27–51.12(a) is applicable only to policies of insurance "issued to," *inter alia*, the trustees of a fund. N.J.Stat.Ann. 17B:27–27. Since all Plan benefits, except the Blue Cross coverage, are self-funded, they are not part of an insurance policy issued to the Plan and do not come under the "issued to" language of the statute.

Blue Cross is not a party to the collective bargaining agreement and is subject to and controlled by state law with respect to policies of insurance issued to the Trustees of any Plan.

■ In any event, the state statute is pre-empted by ERISA to the extent it is suggested as controlling in determining who is eligible for benefits other than Blue Cross coverage under the Plan. This is because the Plan is collectively bargained and is protected by federal law. Section 514(a) of ERISA, 29 U.S.C. § 1144(a) states:

> ... the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title....

See *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) (New Jersey workmen's compensation law preempted by ERISA insofar as it would eliminate the Plan's method of calculating pension benefits); *Dawson v. Whaland,* 529 F.Supp. 626 (D.N.H.1982). Consequently, the court cannot look to state law to determine employee eligibility but must limit its scope of review to the terms of the Plan itself.

Under the Plan, plaintiff's eligibility for conversion rights is limited to Blue Cross coverage. Further, since plaintiff could have been declared ineligible for benefits as of the end of July, 1980, it follows that the Fund did not act arbitrarily or capriciously in cancelling his eligibility as of December 1, 1980. It also follows that the terms of the Plan establishing eligibility periods define and preclude plaintiff's claim for supplemental benefits and extraordinary medical expenses since he was not covered under the Plan for a period of twelve consecutive months.

■ There remains plaintiff's claim for automobile accident coverage for medical benefits inasmuch as the accident did not occur in either New Jersey or New York, but rather in Florida. The Fund, by affidavit of its manager, states that although the language of the exclusion speaks only of exclusion of employees covered by no-fault insurance provisions in those two states it has consistently applied the expressed rationale of the exclusion to all employees covered by insurance in states which have enacted mandatory no-fault insurance provisions. This factual contention is not disputed. The stated rationale for the exclusion is that the Fund not be required to pay for medical expenses covered by the employee's own automobile insurance carrier.

The question becomes whether the Fund Trustees have acted arbitrarily and capriciously by treating alike all employees having no-fault insurance coverage regardless of the state where the insurance is located. The question as posed answers itself since if all persons similarly situated are treated even-handedly there is no room for charges of disparate treatment. Did the Trustees act arbitrarily and capriciously in departing from the language of the exclusion to accomplish a non-discriminatory application of medical benefits? Again, an answer in the negative is compelled. The interpretation of the exclusionary provision is totally consistent with the stated purpose, which is not to pay for those medical expenses covered by an employee's other insurance under "no-fault." As fiduciaries, the Trustees are obligated by law to take all reasonable steps to conserve the assets of the Fund and to interpret and apply the Fund provisions in a non-discriminatory manner. It is immaterial whether the specification of New Jersey and New York was occasioned by the fact that only those states had mandatory no-fault insurance at the time the Fund language was drafted or whether the language was drafted upon an assumption that all covered employees would be residents of those states and therefore have their vehicle insurance policies there. The essential fact is that to provide an exclusion only for New Jersey and New York policy holders would be discriminatory and without rational basis.

The courts cannot substitute their interpretation of the rules and regulations of a plan for that of the trustees authorized to administer a plan. Only if the trustees'

interpretation is arbitrary and capricious will it be disturbed by the courts. *See Rosen v. Hotel and Restaurant Employees,* 637 F.2d 592 (3d Cir.1981), *Aitken v. IP & GCU-Employee Retirement Fund,* 604 F.2d 1261, 1264 (9th Cir.1979); *Rueda v. Seafarers International Union of North America,* 576 F.2d 939, 942–44 (1st Cir. 1978). Here, it cannot be said that the interpretation of the exclusion is arbitrary or capricious.

Under the Pennsylvania no-fault statute, 40 P.S. § 1009.101 *et seq.,* the no-fault insurance carrier is obligated to reimburse the insured for all medical bills and rehabilitation regardless of any negligence. 40 P.S. § 1009.202(b)(2). Accordingly, Cassidy's medical expenses incurred in connection with his accident are payable by his insurance carrier and Cassidy has claimed those medical expenses from his three carriers. Since Cassidy asserts that he did not receive the Group Benefits Booklet until long after his accident, and since he has made claims to each of his automobile insurance carriers, he cannot claim any detrimental reliance.

It is well settled that where a Fund provides an appeals procedure in the event of a dispute, that internal procedure must be exhausted by an aggrieved participant before he institutes an action against the Fund for an improper denial of benefits. *See Challenger v. Local Union No. 1 of the International Bridge, Structural and Ornamental Ironworkers,* 619 F.2d 645 (7th Cir.1980); *Amato v. Bernard,* 618 F.2d 559 (9th Cir.1980); *Wolf v. National Shopmen Pension Fund,* 512 F.Supp. 1182 (E.D.Pa.1981). An internal appeals procedure is provided. Moreover, Article XII of the Fund's rules and regulations provides for the arbitration of "[a]ny and all disputes ... including any dispute raised by any plan beneficiary...." Cassidy has never invoked these rights of appeal and does not contend that he is foreclosed from invoking the appeal and arbitration provisions. Failure to exhaust internal remedies for redress of grievances is a separate ground for granting the motion for summary judgment.

### ORDER

AND NOW, this 7th day of November, 1983, for the reasons stated in the accompanying memorandum, it is hereby ORDERED that defendant's motion for summary judgment is GRANTED.