**BLUE CROSS AND BLUE SHIELD OF KANSAS CITY, Plaintiff-Appellant,**

v.

**Fletcher BELL, Commissioner of Insurance of the State of Kansas, Defendant-Appellee,**

**and**

**Kansas Optometric Association, Inc., Kansas Association of Professional Psychologists, and Kansas Chiropractic Association, Kansas Podiatry Association, Defendants-Intervenors-Appellees.**

No. 84–2700.

United States Court of Appeals, Tenth Circuit.

Aug. 15, 1986.

Max O. Bagby, of Bagby, Jacob & Iliff, Kansas City, Mo. (J. Nick Badgerow, of McAnany, Van Cleave & Phillips, P.A., Kansas City, Kan., with him on briefs), for plaintiff-appellant.

Ted F. Fay, of the Kansas Ins. Dept., Topeka, Kan. (Pamela Sjoholm, Sp. Asst. Atty. Gen., Kansas Ins. Dept., Topeka, Kan., with him on brief), for defendant-appellee.

Larry L. Luttjohann, of Waggener, Arterburn & Luttjohann, Topeka, Kan., on brief for defendants-intervenors-appellees Kansas Optometric, Ass'n, Inc., Kansas Podiatry Ass'n, and Kansas Ass'n of Professional Psychologists.

Steven M. Dickson, of Dickson & Pope, P.A., Topeka, Kan., on brief for defendant-intervenor-appellee Kansas Chiropractic Ass'n.

Paul Scott Kelly, Jr. and John J. Yates of Gage & Tucker, Kansas City, Mo., and Daniel G. Galant, of the Office of the General Counsel, General Motors Corp., Detroit, Mich., filed an amicus curiae brief for General Motors Corp.

Before LOGAN, MOORE and ANDERSON, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

Appellant Blue Cross and Blue Shield of Kansas City, Missouri (Blue Cross), initiated this action challenging the constitutionality of a recently enacted Kansas insurance statute. The district court denied the requested injunctive and declaratory relief. *Blue Cross and Blue Shield of Kansas City v. Bell,* 596 F.Supp. 1053 (D.Kan.1984). During the interval between the perfecting of the appeal and the oral argument, the Supreme Court decided *Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), which settled two of the issues appellant raised in this case. Our review of the remaining issues affirms the correctness of the trial court's order.

## I.

Blue Cross may be described as a nonprofit health service corporation,[1] incorpo-

---

1. Blue Cross insists it is not in the "business of insurance" and is not classified or licensed as an insurance company under Missouri statutes. Much discussion and controversy surround the

rated in Missouri, and authorized to transact business in Kansas. Its group insurance policies are sold to employers in thirty northern Missouri counties, as well as two Kansas counties, Wyandotte and Johnson, which comprise the Kansas side of the metropolitan Kansas City area. The policies at issue provide coverage to Kansas residents employed in Kansas or Missouri and to Missouri residents employed in Kansas. The policies are issued to employee welfare benefit plans, as defined in ERISA, 29 U.S.C. § 1002(1).

At issue is a recently enacted Kansas statute, Act of May 9, 1984, ch. 168, 1984 Kan.Sess. Laws 804 (codified at Kan.Stat. Ann. § 40–2,103 (Supp.1985)) (HB 3064), which broadens the applicability of statutory provisions for mandated-benefits and mandated-providers. *See* Kan.Stat.Ann. §§ 40–2,100, –2,101, –2,102, –2,104 (1981). A mandated-benefit statute requires an insurer to include coverage for certain medical conditions, in this case, newborn infants from the date of birth. Mandated-provider laws, often called "freedom of choice" laws, require an insurer to pay for the services of specific providers. HB 3064 amended Kan.Stat.Ann. § 40–2,103 to include "all insurance policies, subscriber contracts or certificates of insurance delivered, renewed or issued by delivery within or outside of this state or used within this state by or for an individual who resides or is employed in this state" for purposes of the following coverage:

Section 40–2,100: reimbursement or indemnity for services performed by an optometrist, dentist or podiatrist;

Section 40–2,101: reimbursement or indemnity for any service within the scope of practice licensed under the Kansas healing arts act when rendered by any such licensed practitioner;

Section 40–2,104: reimbursement for the services performed by a certified psychologist; and

Section 40–2,102: insurance coverage for newly born children.

Upon the unanimous passage of HB 3064, Blue Cross filed suit for a preliminary injunction. Relief was denied, and the matter was later heard on the merits. Blue Cross alleged HB 3064 regulates employee-benefit plans and is, thus, preempted by ERISA, 29 U.S.C. § 1144(a); violates the right to contract and denies due process; and unduly burdens interstate commerce.

The district court entered judgment in favor of defendants, Fletcher Bell, the Commissioner of Insurance of Kansas, and professional organizations of optometrists, chiropractors, psychologists, and podiatrists. The district court found that Blue Cross issues insurance contracts to employers in Kansas and Missouri and that as an employer, Blue Cross employs residents of Kansas and Missouri who receive health care benefits through allegedly self-insured plans.[2] Finally, the court found enforcement of HB 3064 would increase the actual cost of service benefits and the administration of claims. The district court concluded, as a matter of law, although Blue Cross has standing to assert constitutional claims, it did not prove standing to assert a claim under ERISA, 29 U.S.C. § 1132, because Blue Cross is not a participant, beneficiary, or fiduciary of a plan. Hence, the district court did not address the issue of ERISA preemption. The district court held HB 3064 did not violate the contract clause, commerce clause, or due process clause of the Fourteenth Amendment. *Blue Cross and Blue Shield of Kansas City v. Bell,* 596 F.Supp. at 1058–60. Blue Cross ap-

---

characterization of Blue Cross. *See, e.g., Group Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 229 & n. 36, 99 S.Ct. 1067, 1082 & n. 36, 59 L.Ed.2d 261 (1979); *Virginia Academy of Clinical Psychologists v. Blue Shield of Virginia,* 624 F.2d 476, 480 & n. 3 (4th Cir.1980), *cert. denied,* 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981).

**2.** As the district court noted, the testimony of Blue Cross employees on whether its own employee benefit plan for health insurance is self-funded was confusing and inconclusive. From the outset, however, Commissioner Bell stipulated HB 3064 did not apply to self-funded employee welfare benefit plans.

pealed the trial court's asserted misapprehension of its right to invoke standing under ERISA, along with the other constitutional claims.

The recent decision in *Metropolitan Life*, 105 S.Ct. at 2380, disposes of a portion of the appellant's ERISA preemption claim. *Metropolitan Life* held that the challenged Massachusetts mandated-benefit law constitutes "the business of insurance" and, therefore, is exempt from ERISA preemption under 29 U.S.C. § 1144(b)(2)(B), the "deemer clause." Two issues raised by this appeal remain. Left unresolved by the Supreme Court in *Metropolitan Life* is the status of mandated-provider laws. Blue Cross contends a mandated-provider law does not directly relate to the substantive content of insurance contracts, is not "the business of insurance," and is preempted by ERISA. Second, Blue Cross insists that HB 3064 fails to meet a threshold due process requirement of "significant contact" with the forum state to permit its extraterritorial application.

## II.

■ To resolve whether the mandated-provider law at issue constitutes the "business of insurance" as defined in the McCarran-Ferguson Act,[3] we rely on the analysis in *Metropolitan Life*. Although HB 3064 may relate to employee-benefit plans governed by ERISA, the "deemer clause," 29 U.S.C. § 1144(b)(2)(B), "makes explicit Congress's intention to include laws that regulate insurance contracts within the scope of the insurance laws preserved by the saving clause."[4] *Metropolitan Life*, 105 S.Ct. at 2390. In response to the argument that the subject mandated-benefit law was not a

traditional insurance law but really a health law, the *Metropolitan Life* court applied three criteria identified under the McCarran-Ferguson Act to determine whether the particular practice qualifies as the "business of insurance." First, the practice must have the effect of transferring or spreading a policyholder's risk. Second, the practice must be an integral part of the policy relationship between the insurer and the insured. Third, the practice must be limited to entities within the insurance industry. *Id.* at 2391 (citations omitted). Applying this analysis to the Massachusetts law requiring coverage of the treatment of mental illness, the Court concluded the law is "the very kind of regulation ... identified as a law that relates to the regulation of the business of insurance as defined in the McCarran-Ferguson Act." *Id.*

Does the applicability of HB 3064 to the mandated-provider statutes equally regulate the substantive content of insurance contracts within the scope of the insurance saving clause of ERISA? Stated more specifically, does the insured's freedom to choose any practitioner licensed to practice under the Kansas Healing Arts Act, Kan. Stat.Ann. § 65–2801, *et seq.*, have the effect of transferring or spreading the policyholder's risk; become an integral part of the policy relationship between the insurer and the insured; and relate only to entities within the insurance industry? Although the Court has held that certain provider agreements do not satisfy these criteria,[5] we believe the mandated-provider laws at issue fall within the requirements of the McCarran-Ferguson Act.[6] We look to basic principles of insurance for direction.

---

**3.** The McCarran-Ferguson Act § 2(a), 15 U.S.C. § 1012(a), provides in part: "The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business."

**4.** The *Metropolitan Life* court noted that ERISA's saving clause contains wording similar to that of the McCarran-Ferguson Act and "appears to have been designed to preserve the McCarran-Ferguson Act's reservation of the

business of insurance to the States." *Metropolitan Life*, 105 S.Ct. at 2392 n. 21.

**5.** *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982); *Royal Drug*, 440 U.S. at 205, 99 S.Ct. at 1067.

**6.** Indeed, the *Royal Drug* court noted parenthetically: "It is true that some type of provider agreement is necessary for a service benefit plan to exist." *Royal Drug*, 440 U.S. at 213 n. 9, 99 S.Ct. at 1074 n. 9. *See generally*, Note, *ERISA*

Risk, "an abstract concept with no physical counterpart," is the essence of the bargain evidenced by an insurance contract. R.E. Keeton, *Insurance Law* § 1.2(b) (1971). "Insurance is an arrangement for transferring and distributing risk." *Id.* at § 1.2(a). Consequently, the insurance policy defines the scope of risk assumed by the contracting parties. *Id.* at § 5.1(a). In reference to the Supreme Court's analysis of the "business of insurance," the insured's right to choose the type of practitioner to fulfill the agreed upon coverage must figure into, and play a part in, "the spreading and underwriting of a policyholder's risk." *Group Life & Health Insurance Co. v. Royal Drug Co.*, 440 U.S. 205, 211, 99 S.Ct. 1067, 1073, 59 L.Ed.2d 261 (1979).

For example, the risk that an individual may need back care may be transferred to Blue Cross by means of the policy. The policy determines the scope of coverage, that is, whether Blue Cross has assumed the risk of the entire loss. Implicit in the coverage of back care is the insured's choice of a deliverer of the care. The choice of a provider does not add to the insured's coverage but is of the essence of that coverage bargained for as the transferred risk. Thus, the mandated-provider statutes at issue satisfy the first criterion of the "business of insurance."

The second criterion is readily met. The selection of a particular provider is as integral to the bargained-for coverage as the coverage itself. The freedom to choose a treating physician is inextricable from the nature of the coverage provided. Because the policy alone has defined the limits of coverage, the insured's choice of a provider resides within the contractual relationship between the insurer and the insured. *Metropolitan Life*, 105 S.Ct. at 2391.

Finally, we consider whether the practice is limited to entities within the insurance industry. Unlike *Royal Drug*, which involved a collateral arrangement between the insurer and certain pharmacies to control the cost of prescriptions, the provider practice at issue in this case involves the very implementation of the terms of the policy. The mandated-provider statute "impose[s] requirements on insurers, with the intent of affecting the relationship between the insurer and, thus, the policyholder." *Id.* The challenged practice is essential to the insurance policy itself. *Klamath-Lake Pharmaceutical Association v. Klamath Medical Service Bureau*, 701 F.2d 1276 (9th Cir.), *cert. denied*, 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983).

The Kansas mandated-provider statutes are distinguishable from those arrangements determined not to constitute the "business of insurance" in *Royal Drug* and *Pireno*, both of which arose under § 1 of the Sherman Act. In *Royal Drug*, independent pharmacists challenged Blue Shield which had entered into agreements with certain pharmacies to fill prescriptions for its policyholders at $2 above cost. The Court held the subject Pharmacy Agreements were indistinguishable from other business arrangements made by insurance companies to keep costs low but in no way affected the basic risk-spreading relationship between the insurer and the insured. *Royal Drug*, 440 U.S. at 215, 99 S.Ct. at 1075. Similarly, in *Pireno*, the Court held the use of a peer review committee to examine claims for reimbursement for chiropractic treatment was not exempt from antitrust scrutiny as part of the "business of insurance." Applying the three criteria, the *Pireno* court concluded the peer review practice at issue involved a practice wholly outside the insurance industry. *Union Labor Life Insurance Co. v. Pireno*, 458 U.S. 119, 134 & n. 8, 102 S.Ct. 3002, 3011 & n. 8, 73 L.Ed.2d 647 (1982). "Arrangements between insurance companies and parties outside the insurance industry can hardly be said to lie at the center of that legislative concern." *Id.* at 133, 102 S.Ct. at 3011.

The Missouri Supreme Court recently reconsidered its decision on a similar Missouri statute, Mo.Rev.Stat. § 354.095 (Supp.

1983),[7] in the light of *Metropolitan Life.* The court concluded there is "no viable distinction between the mandated-benefit provisions involved in *Metropolitan Life* and our mandated-provider statutes." *Blue Cross Hospital Service, Inc. v. Frappier,* 698 S.W.2d 326, 327 (Mo.1985) (en banc). *See also Insurance Commissioner of State of Maryland v. Metropolitan Life Insurance Co.,* 296 Md. 334, 463 A.2d 793 (1983).

The mandated-benefit and mandated-provider coverage in HB 3064 is the very "type of state regulation that centers around the contract of insurance.... The relationship between insurer and insured, the type of policy which could be issued, its reliability and enforcement—these were the core of the 'business of insurance.'" *SEC v. National Securities, Inc.,* 393 U.S. 453, 460, 89 S.Ct. 564, 568, 21 L.Ed.2d 668 (1969). The Kansas mandated-provider statutes constitute the "business of insurance" reserved to the states by the McCarran-Ferguson Act and are, thus, exempt from ERISA preemption.

### III.

Blue Cross contends "since residency is the sole qualifier—and sole justification— for extension of benefits ... in K.S.A. 40–2,103," it fails to meet threshold due process requirements under *Allstate Insurance Co. v. Hague,* 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981), and *Hartford Accident & Indemnity Co. v. Delta & Pine Land Co.,* 292 U.S. 143, 54 S.Ct. 634, 78 L.Ed. 1178 (1934). Appellant cites *Simms v. Metropolitan Life Insurance Co.,* 9 Kan.App.2d 640, 685 P.2d 321 (1984), in support of this contention. *Simms,* appellees insist, is inapposite because that law, requiring reimbursement for alcohol rehabilitation, did not have extraterritorial application, and the Kansas court properly so concluded. However, HB 3064 specifi-cally requires the extension of benefits to individuals who *reside* in or are *employed* in Kansas.

We therefore apply a balancing test to determine whether the state interest in the subject legislation is substantial in order to overcome the incidental extraterritorial effect. *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970); *United States Brewers Association, Inc. v. Healy,* 692 F.2d 275 (2d Cir.1982), *aff'd,* 464 U.S. 909, 104 S.Ct. 265, 78 L.Ed.2d 248 (1983). Although witnesses for Blue Cross offered testimony on the increase in actual costs for provider reimbursement to Missouri residents and administrative costs to set up new contract groups comprised of Missouri residents employed in Kansas, the district court properly weighed this testimony against that of the Commissioner of Insurance and held the public benefit of the increased insurance protection outweighed the minimal economic impact on Blue Cross.[8]

That insurance regulation remains within the proper sphere of state regulation was assured by the passage of the McCarran-Ferguson Act. "The continued regulation and taxation by the several states of the business of insurance is in the public interest." 15 U.S.C. § 1011. The district court properly concluded the extraterritorial application of HB 3064 does not violate due process. Regulations cannot be attacked merely because they affect business activities which are carried on outside the state. *Hoopeston Canning Co. v. Cullen,* 318 U.S. 313, 320, 63 S.Ct. 602, 606-07, 87 L.Ed. 777 (1943). *See also Osborn v. Ozlin,* 310 U.S. 53, 60 S.Ct. 758, 84 L.Ed. 1074 (1940). Our examination of the record confirms the district court's conclusion that the extraterritorial impact is minimal.

---

7. Mo.Rev.Stat. § 354.095 (Supp.1983) requires health insurers to permit the assignment of an insured's right to reimbursement for drugs and medicines to pharmacists, whether or not the pharmacists have contracts with insurance carriers or health service organizations.

8. Kansas, like many other states, has an uninsured motorist statute with extraterritorial impact as well as an antifraud insurance statute prohibiting the sale of fraudulent insurance contracts to residents and nonresidents.

■ Because HB 3064 applies only to contracts of insurance issued or renewed, no sudden, totally unanticipated, and substantially retroactive obligation burdens these contractual relationships. *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978). Moreover, Missouri has passed a similar freedom of choice statute,[9] and Kansas and Missouri already provide coverage to newborns.[10] In fact, the health policies at issue already include reimbursement to podiatrists, optometrists, and psychologists for certain services.[11] The district court's conclusion that the subject legislation does not offend the contract clause is affirmed.

---

**9.** Approximately forty-six states have passed mandated-provider laws. *See* Note, *ERISA Preemption of State Mandated-Provider Laws,* 1985 Duke L.J. 1194 & n. 8.

**10.** A witness for Blue Cross testified, "Most states have laws which are almost identical regarding newborn children. Therefore there is not an extraterritorial problem there." R. IX, 43.

**11.** It would appear that Blue Cross's bone of contention is the reimbursement of chiropractors. Testimony established the statutory effect on the present reimbursement of podiatrists, optometrists, and psychologists is minimal.